THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| HENRY AYO, and KAIASHA WHITE on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CLEVE DUNN, Sr., <br><br> REHABILITATION HOME INCARCERATION, <br><br> EAST BATON ROUGE PARISH, <br><br> Defendants. | Case No. 3:17-cv-526 <br><br> **COMPLAINT – CLASS ACTION** <br><br> **JURY DEMAND** |

## I.     PRELIMINARY STATEMENT

1.     For years, Defendant Rehabilitation Home Incarceration ("RHI"), a private organization purporting to provide pretrial supervision services, has profited off individuals in East Baton Rouge Parish by requiring them to pay hundreds of dollars to RHI to be released from jail—effectively holding them for ransom.  This fee is the creation of RHI alone—it is not ordered by any court.  Those who cannot afford the fee languish in jail for days, weeks, or even months as they and their loved ones scramble to pay off RHI.

2.     This scheme is arranged by Cleve Dunn, Sr. ("Dunn"), RHI's Chief Executive Officer, and officials with the East Baton Rouge Parish Prison (the "Prison"), who, at RHI's direction, refuse to release individuals ordered to RHI supervision until they pay the initial fee. These officials do not inquire into an individual's ability to pay RHI's initial fee.

1

3.     The practice occurs with the knowledge of Trudy White, a criminal court judge of the Nineteenth Judicial District Court of Louisiana (the "JDC"), who sets bond for arrestees and indiscriminately orders them to undergo supervision by RHI—often for indefinite periods of time before their cases go to trial.

4.     After arrestees pay RHI's initial fee and are released by the Prison, RHI continues to exact money from them, charging a $225 monthly fee and additional fees for requirements such as classes and ankle monitoring.  RHI and Dunn wrongfully use the threat of arrest by East Baton Parish Rouge law enforcement or RHI officials, as well as the threat of bond revocation by the JDC and additional jailing at the Prison, to coerce payment.

5.     Plaintiffs Kaiasha White and Henry Ayo bring this class action pursuant to 42 U.S.C. § 1983, the Louisiana and federal Racketeering Influenced and Corrupt Organization Acts (RICO), and other state causes of action against Defendants Dunn, RHI", and East Baton Rouge Parish ("the Parish").  Defendant Dunn regularly commits predicate acts under RICO–extorting money from Plaintiffs and the proposed Class—by wrongfully detaining them in jail until they pay RHI's initial fee, then threatening them with additional jailing if they fail to satisfy RHI's continuing demands for money once released.  Plaintiffs seek actual and treble damages to compensate them and the proposed Class for the injuries they have sustained, and continue to sustain, because of Defendant Dunn's extortionate activities.

6.     Plaintiffs Ayo and White and the proposed Class also seek damages from East Baton Rouge Parish and RHI for their policy and practice of detaining Plaintiffs and proposed Class members in the Prison until they paid RHI's initial fee, in violation of the Fourteenth Amendment's guarantees of due process and equal protection and their Fourth Amendment right against unreasonable seizures.

2

7.     Finally, Plaintiffs Ayo and White individually seek damages from RHI under the Louisiana Unfair Trade Practices Act for RHI's harmful and oppressive commercial practices, and, on behalf of themselves and the proposed Class, seek damages from RHI for conversion and unjust enrichment under state law.

## II.     JURISDICTION AND VENUE

8.     This is a civil class action arising under 42 U.S.C. § 1983, 18 U.S.C. § 1964, the United States Constitution, and Louisiana law.

9.     The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The Court has jurisdiction over Plaintiffs' claims under Louisiana law pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## III.     PARTIES

**A.  Plaintiffs**

11.     Plaintiff Henry Ayo is a resident of East Baton Rouge Parish.

12.     Plaintiff Kaiasha White is a resident of East Baton Rouge Parish.

**B.  Defendants**

13.     Defendant Cleve Dunn, Sr., is the Executive Director of Rehabilitation Home Incarceration.  He is a resident of East Baton Rouge Parish, Louisiana.

14.     Defendant Rehabilitation Home Incarceration ("RHI") is a non-profit corporation registered with the State of Louisiana, with its principal place of business in East Baton Rouge Parish, Louisiana.

15. Defendant East Baton Rouge Parish is a parish organized under the laws of the State of Louisiana.

## IV. FACTS

### *General Facts*

**A. The Nineteenth Judicial District Court**

16. The Nineteenth Judicial District Court (the "JDC") has original jurisdiction over all civil and criminal matters and original exclusive jurisdiction of state felony cases in East Baton Rouge Parish, Louisiana. La. Const. art. V, § 16(A)(1)-(2). Louisiana district court judges are elected and serve six-year terms. There are eight criminal court judges who hear misdemeanor and felony cases in the JDC.

17. The JDC and individual judges also make agreements with private companies to provide certain court services such as pre-trial supervision.

18. Judge White has served on the JDC since 2009 and was re-elected to the JDC in 2014. She presides over both civil matters and state misdemeanor and felony cases assigned to Criminal Division J, Section 8, of the JDC.

**B. RHI's Judicial and Political Ties to Judge White**

19. RHI is among the private companies that offer pretrial supervision services for the JDC.

20. According to its website, RHI, which is registered as a non-profit corporation in Louisiana,[1] has supervised thousands of individuals in East Baton Rouge, Orleans, Ascension, and Tangipahoa parishes since its inception in 1993.[2]

---

[1] *See* La. Sec'y of State, "Search for La. Business Filings," Rehabilitation Home Incarceration, https://coraweb.sos.la.gov/CommercialSearch/CommercialSearchDetails.aspx?CharterID=601962_DF50A07E17.

21.     RHI is owned and operated by the Dunn family, who live in Baton Rouge. Cleve Dunn Sr., Evonne Dunn, and Tameka Dunn all serve as co-directors of RHI.

22.     RHI is the only approved vendor for pre-trial supervision on Judge White's website.[3]

23.     RHI does not have a formal written contract with the JDC. Its provision of services to Judge White is based on an informal arrangement between RHI and Judge White.

24.     RHI officials and Judge White are political allies. RHI officials and employees supported Judge White's 2014 re-election campaign.

25.     Cleve Dunn Jr. served as Chairperson of Judge White's Campaign Committee; White's campaign paid Cleve Dunn, Sr. for marketing; and RHI paid Frederick Hall, a former RHI employee, and his wife, Gloria Hall, who owns and operates the bond company to which RHI routinely refers putative supervisees, for campaign support activities.

C.  **Defendants' Pretrial Supervision Scheme**

26.     Individuals arrested for criminal offenses in East Baton Rouge Parish are initially taken to the East Baton Rouge Parish Prison (the "Prison").

27.     The following day, they appear via closed-circuit television between the Prison and the JDC for a hearing to determine probable cause for detention and to set bond. The eight criminal judges of the JDC take turns conducting this hearing, with each serving as the "duty judge" for a given week.

---

[2] *Who We Are*, REHAB. HOME INCARCERATION (2014), http://www.rhiweb.com/.
[3] Judge Trudy M. White, "Approved Vendors," http://judgetrudywhite.com/page.php?name=vendors (last visited Mar. 31, 2017). Judge White also assigns individuals a company called Street Crimes Alternatives for pretrial supervision. However, this company is also run by Dunn.

28.     Usually before the hearing, the judge on duty has already reviewed the affidavit of probable cause and set a bond amount and release conditions for the defendant.  At this hearing, the duty judge may adjust an arrestee's bond based on facts disclosed at the hearing.

29.     When Judge White is on duty, she typically asks an arrestee only about his knowledge of the charges and informs him of the bond amount.  She generally does not ask questions beyond these topics.  Nor does she allow arrestees to be heard on issues beyond these topics.  Although a public defender may be present to note the cases appointed to the public defender office, no representation is provided at this initial hearing.

30.     Since Judge White's re-election to the JDC in 2014, she has assigned arrestees to supervision by RHI.  White does so without conducting in open court an individualized determination of, or providing an opportunity for arrestees to be heard on,  the need for, or the conditions of, RHI supervision.  Indeed, White appears to make assignments to RHI via the bond form before arrestees appear before her, and she does not ask arrestees any questions before assigning them to RHI, such as whether an arrestee can afford to pay bond or RHI's initial or monthly fees.

31.     Rather than conduct these inquiries, Judge White signs an order making RHI supervision a condition of release on bond, without instruction about the terms of this supervision.  Plaintiff Ayo's bond order, which includes the term of supervision by RHI while on bond, is reproduced here:

To The Sheriff of the Parish of East Baton Rouge:

You are hereby authorized to release: _Henry Ayo._

accused of: _Sim. Burg. of Inhab. Dwell. – $5000_

_Att. Theft – $1500_

_Crim. Trespass – $1000_

_Sim Criminal Damage to Property – 500_

(See attached order if there are additional charges or orders)

upon a good and solvent bond conditioned as the law directs in the total sum of $ _8,000_

_Eight thousand $._ _____ Dollars and returnable to the

NINETEENTH JUDICIAL DISTRICT COURT in the Parish of East Baton Rouge.

**SPECIAL CONDITIONS --**

(Check All That Apply)

|   |   |
|---|---|
|   | Defendant may be signed out by _____ who shall act as his/her personal surety in the amount of $ _____ Dollars. |
|   | You shall be randomly tested for ingestion of controlled dangerous substances while on bond. Random drug tests may be administered upon request of bond supervisor, upon request from Judge in open court and/or as part of a random testing program administered by the Drug Lab for the 19th Judicial District Court. |
|   | You shall, the next business day after your release from parish prison, appear in the Drug Lab, Room 3501, 19th Judicial District Court, to be drug tested and to sign up for random drug testing for _____ days. (Phone: 225-389-2596) |
|   | You shall observe a daily curfew from _____ PM. to _____ AM. |
| X | You shall be under the supervision of _RHI – Olive Du__ @ 364-7755_ for a period of _90_ days to ensure compliance with this order upon release on bond. |
| X | You shall not be released on bond without first meeting with your bond supervisor. |
|   | You shall have affixed to your ankle a functioning GPS device to ensure that you comply with the bond conditions set forth herein. This device shall be monitored by your bond supervisor. |
|   | You shall not operate a motor vehicle unless it is equipped with a functioning interlock device, and this device must be installed within fifteen (15) days from posting bail. |
|   | You shall not be released on bond until a protective order is in effect. |
|   | You shall not travel or reside outside the State of Louisiana without prior approval from the Court. |
|   | You shall not in any form or manner contact or communicate with the alleged victim in this case. |
|   | You shall be under house arrest and shall not leave your home for any reason except to attend court hearings and to: ____ |
|   | You shall not be released on bond prior to the Office of Probation and Parole being notified. (Phone - 225-922-0227) |

____ Other: _____

____ Other: _____

____ Other: _____

32.     Judge White usually sets the duration of RHI's supervision at either ninety days, irrespective of the supervisee's next court date, or for an indefinite period of time.

33.     As shown in Ayo's bond order, however, Judge White otherwise does not provide specific supervision terms for RHI to enforce. For instance, Judge White does not order a curfew or impose house arrest on those assigned to RHI, though those are listed as "special conditions" that she could check to apply in her standard order.

34.     Nor does Judge White order payment of the initial fee or monthly fee as a condition of release from the Prison.  Instead, RHI sets this payment as a condition of release.

35.     East Baton Rouge Parish has authority over, and responsibility for, operating the Prison, and Sheriff Gautreaux III and Warden Grimes have final policymaking authority for the East Baton Rouge Parish's operation of the Prison.

36.     Through an agreement with RHI, Sheriff Gautreaux III and Warden Grimes, as final policymakers for East Baton Rouge Parish with respect to jailing and releasing arrestees at the Prison, created and enforce a policy that the Prison will not release arrestees from the Prison until it receives permission from RHI—permission that comes only after RHI is satisfied with the initial payment made.

37.     RHI demands an initial fee of $525.

38.     Arrestees typically only learn they must pay this initial fee to be released when they or their family members attempt to post bail or when they first meet with RHI at the Prison.

39.     Arrestees who cannot immediately pay the initial RHI fee may wait in jail for days or weeks until they can pay all or some portion of the initial fee.

40.     At the time of release, the arrestee's next court date typically has not been scheduled, and the arrestee has not been arraigned.  In some cases, the supervisee is not arraigned during the RHI supervision term.  Thus, supervision sometimes ends before the arrestee ever re-appears before Judge White for his or her next hearing.

41.     Upon release, RHI requires the arrestee—now a "supervisee"—to sign a contract setting forth RHI's future fees and conditions of supervision.  A copy of a redacted, standard contract is reproduced here:

8

## Contract

This Contract between Rehabilitation Incarceration referred to as RHI and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ referred to as client is effective as follows: This contract made and entered into this *7M* day of *OCT* 20*16*. This client agrees to be intensely monitored by RHI upon release by the Court, and further agrees to adhere to the monitoring procedures explained and listed below. The client agrees to comply with the following: *Sun - Thurs 10P - 6A      Fri - Sat 11P - 6A*

1. Curfew shall be from ~~9:00pm until 6:00am~~. On the days the client is not working, the client shall be confined to his/her residence unless an emergency occurs. The client *shall inform the assigned monitor who will evaluate the emergency and make a decision.*
2. The Client shall provide RHI with a work schedule weekly and immediately inform the assigned monitor of any changes.
3. The Client shall not consume any alcohol beverages and/or any illegal drugs during the monitored period; and will refrain from bad associates and stay away from any and all firearms and weapons.
4. The Client shall not leave the Parish of East Baton Rouge without permission from ▮▮▮▮▮▮ RHI and the court. *8A - 11A - 3P - 8P*
5. The client shall contact the monitor four different times during the day providing the monitor with all activities, when not working.
6. The Client agrees to be available for mental evaluation immediately upon release from jail; the evaluation must be done by a certified physician in the area. Please provide results to your Monitor.
7. All clients will be required to do a minimum of 50 hours of community service; and will have to take an Anger Management class.
8. The Client understands that any violation of this agreement shall be immediately reported to the courts, which may result in the client immediate arrest either by ▮▮▮▮▮▮▮ RHI official or East Baton Rouge City Police.

In condition of the provided services, the client agrees to pay RHI a registration fee of $225.00, plus a $300.00 investigation fee, which are both non-refundable. Payments shall be made in U.S. currency, money order or certified check. This payment is due upon the release of the client from incarceration. RHI monthly fee is $225.00 that's due at the first of every month. THUS done and signed this *7M* day of *OCT*, 20*16* AT BATON ROUGE, LOUISIANA.

42.     According to the terms of RHI's standard contract, RHI supervisees must pay a $225 monthly fee to their assigned RHI officer, or "Monitor," during their supervision term.

43.     The standard contract also sets a curfew for supervisees, restricting supervisees from spending the night anywhere other than at their reported residential address.

44.    Despite collecting significant fees for its supervision, RHI does not require supervisees to make other substantive reports to their RHI Monitor other than their compliance with curfew.  Nor does it typically require supervisees to meet their Monitor in person unless it is to make payment of their supervision fees.  Rather, supervisees must only call their RHI Monitor by telephone multiple times a day and leave a voicemail message if the Monitor does not answer.

45.    At RHI's discretion, a Monitor may require a supervisee to wear an electronic monitoring device at all times for additional fees.

46.    Additionally, RHI may require supervisees to attend and pay additional fees for classes taught by RHI employees.  RHI also imposes a number of other conditions, including prohibiting supervisees from consuming any alcohol, restricting their movement to within East Baton Rouge Parish, requiring them to complete a "mental evaluation" through a certified physician, or mandating 50 hours of community service.

47.    RHI's standard contract with supervisees explicitly states that it will report any violation of these conditions to the JDC, which may result in the supervisee's arrest by "East Baton Rouge City Police" or by an RHI official.

48.    RHI Monitors and Dunn himself threaten supervisees with re-arrest if they fail to make financial payments or comply with RHI's costly supervision conditions—without affirmatively inquiring into their ability to pay.  Accordingly, supervisees pay (or attempt to pay) the fee out of fear of re-arrest and bond revocation by scraping together money from friends or family.

49.    The policies and practices of RHI, including the standard contract and the fees required, were implemented by Defendant Dunn and enforced by his employees at his direction.

**D.  Plaintiffs' Experience with Defendants' Pretrial Scheme**

### a. Plaintiff Henry Ayo

50.     Plaintiff Henry Ayo appeared before Judge White on August 8, 2016, via closed circuit television from the Prison after he was arrested on suspicion of attempting to steal an air conditioning unit from a vacant property.

51.     Judge White set his bond at $8,000, informed him of the charges, and assigned him to RHI supervision.  White informed him that someone from RHI would visit him at the Prison to explain the process.

52.     Judge White did not ask Mr. Ayo any questions about himself, his charges, or his case; she did not set or otherwise explain any terms of the RHI supervision; and she did not allow Mr. Ayo to ask any questions concerning the supervision.

53.     A few days later, a RHI employee Frederick Hall came to the Prison and brought documents for Mr. Ayo to sign.  Mr. Hall told Mr. Ayo that he would have to wear an ankle monitor and pay for it before he could be released.  Mr. Hall said that once he was released, Mr. Ayo would have to call his RHI monitor every day in the morning and at night to ensure he was complying with his curfew, and that he would also have to pay a monthly fee to RHI.  Mr. Hall explained that Mr. Ayo would be under house arrest, but he could leave for approved events like work and church.

54.     Mr. Ayo stayed in jail another two months because he and his wife could not afford the bond amount and to pay RHI.  Mr. Ayo was not working at the time and relied on his wife's earnings.

55.     When Mr. Ayo and his wife finally saved up enough money, the bail bondsperson came to their house, took the money for the bail fee, and agreed to post bail.  The bondsperson told Ms. Ayo that she needed to call RHI but that the bondsperson did not know why.

56.    Ms. Ayo called RHI and spoke to Mr. Hall.  Mr. Hall informed her that she still had to pay approximately $500 to RHI for Mr. Ayo to be released from the Prison and would have to continue paying each month.  Mr. Hall then came to her house to collect this initial fee. Ms. Ayo told Mr. Hall she could not pay the full amount at that time.  Mr. Hall allowed her to pay $225 initially, and to pay the rest later.  She asked Mr. Hall how much they would have to pay in total, and Mr. Hall told her it would likely add up to $1000.

57.    RHI then notified Prison officials that they could release Mr. Ayo from jail, and the Prison released Mr. Ayo.

58.    Later, an RHI Monitor came to Mr. Ayo's home for him to sign additional documents.  The Monitor required Mr. Ayo to sign a contract, which provided that, if Mr. Ayo violated the agreement, including nonpayment of the $225 monthly fee, he could be arrested by an RHI official or East Baton Rouge law enforcement.

59.    The Monitor told Mr. Ayo that in addition to reporting to her, he would have to take a decision-making class with an additional fee.  However, Mr. Ayo never paid or went to this class.

60.    While on RHI supervision, Mr. Ayo, who was not stably employed at the time, would pay as much money as he could to cover RHI's fees—typically sending $50 or $100 money orders in the mail.  Despite their attempts to keep up with the payments, RHI charged them late fees.  Mr. Ayo and his wife, who helped with the payments and was working two jobs, had to put off paying for utilities such as water and electricity to pay RHI.

61.    Mr. Ayo was never given an ankle monitor, though the RHI representative had told him his fees were in part to pay for the ankle monitor.

62.    Mr. Ayo paid until his case concluded on February 27, 2017.

63.     After the case closed, RHI still called Mr. Ayo to demand that he pay $200 that it claimed he owed RHI. Altogether Mr. and Mrs. Ayo have paid approximately $1,000 to RHI.

**b. Plaintiff Kaiasha White**

64.     Plaintiff Kaisha White appeared before Judge White on August 8, 2016, after her arrest on charges of simple and aggravated battery concerning an argument with her partner.

65.     Judge White set her bond at $4,000 and informed her that she would also have to report to RHI.

66.     Judge White did not ask Ms. White any questions about herself, her charges, or her case; did not set any terms of the RHI supervision; and did not allow Ms. White to ask any questions about the supervision.

67.     Ms. White did not have money to pay RHI, as she was unemployed at the time and relied on her partner and family members to pay her living expenses.  Thus, she was detained in the Prison for another month until her mother received a social security check.

68.     On or about September 1, 2016, Ms. White's mother gave a bail bondswoman $500.  The bondswoman told Ms. White that the bondswoman and RHI would split the payment, and that a portion would go towards RHI's initial fee.

69.     The next day, RHI employee Hall went to the Prison and met with Ms. White. He informed her that she would have to pay the remainder of the initial fee and monthly supervision fee after she was released.  He then had her sign RHI's contract, which provided that Ms. White could be arrested by an RHI official or East Baton Rouge law enforcement if she violated its terms. Later that day, Ms. White was released from the Prison.

70.     During Ms. White's detention in the Prison for her inability to pay RHI's initial fee, a severe flood hit Baton Rouge in mid-August, damaging her home and her and her son's

belongings.  Because she was being held in the Prison, she could not check on her home or attempt to salvage her possessions for several weeks.

71.    Following Ms. White's release from the Prison, Ms. White's mother paid an additional $250 towards the initial fee.  Ms. White later met with Frederick Hall at her house. Mr. Hall told her that she would have to wear an ankle monitor and that he would call her each night to make sure she obeyed curfew.

72.    In the following months, Ms. White called Mr. Hall on occasion to let him know she was trying to save up money to pay her monthly fee.  She repeatedly asked him how long she would be on RHI supervision, but he did not give her a definite time; her bond order also did not indicate how many days she would be on supervision.  Mr. Hall also did not provide Ms. White with an ankle monitor.

73.    As time passed and she still was not able to pay RHI's monthly fees, Mr. Hall accused her of falsely claiming that she was trying to pay.  Ms. White became afraid that RHI would have her arrested.

74.    During this time, Ms. White lacked a stable place to live and had to stay with family and friends because her home was still flood damaged.

75.    On or about late December or early January, Ms. White told Mr. Hall that she could pay RHI $300.

76.    Because Ms. White was worried that if she saw Mr. Hall in person, he would have her arrested, she had her son meet Mr. Hall to deliver the payment.

77.    Sometime after she made this payment, another RHI representative also called Ms. White to inform her she had failed to pay for and attend a $55-per-month class.  However, Mr. Hall had not told Ms. White that she was required to attend this class. The RHI

representative told her that if she did not comply, RHI would have her arrested during the next police "round up."

78.     Ms. White called Mr. Hall to ask why she was being required to take and pay for the class, but no one answered at his phone number. She subsequently received a letter from RHI stating that Mr. Hall had left RHI.

79.     Ms. White did not hear from Mr. Hall again. However, she began receiving letters from RHI claiming that she owed roughly $800. Ms. White lacks the money to pay this amount. She still does not know for how long she was under RHI supervision or whether it has actually ended.

*Facts Common to All RICO Counts*

80.     Plaintiff White is a "person" entitled to bring a private cause of action under 18 U.S.C. § 1964(c) and La. Stat. Ann. § 15:1356(E).

81.     Plaintiff Ayo is a "person" entitled to bring a private cause of action under 18 U.S.C. § 1964(c) and La. Stat. Ann. § 15:1356(E).

82.     RHI is a corporate enterprise that regularly engages in interstate commerce. RHI's engagement in interstate commerce includes, but is not limited to, using telecommunications and electronic monitoring technology to track supervisees across state lines, purchasing and employing electronic monitoring devices that are produced and sold outside the state of Louisiana, accepting payment of fees by credit card, and maintaining a website available to users in interstate commerce.

83.     Defendant Dunn is an individual and thus a "person" within the meaning of 18 U.S.C. § 1961(3).

84.    Defendant Dunn has conducted the affairs of RHI through a pattern of racketeering to achieve the common purpose of unlawfully extorting money from Plaintiffs Ayo and White and the proposed Class. These racketeering acts are an integral part of RHI's regular course of business.

85.    As described above, on numerous occasions over an unknown period of time Defendant Dunn has committed related, predicate acts of extortion by threatening to keep, and—through East Baton Rouge officials Gautreaux III and Grimes—arranging with the Prison to keep Plaintiffs and the proposed Class in jail until they have paid RHI's required initial fee, and instructing his employees to do the same. Thereafter, Defendant Dunn, directly and through the actions of his Monitors and other employees, continues this unlawful use of fear to threaten Plaintiffs and the proposed Class with further jail time or court sanctions if they fail to pay RHI's monthly and programmatic fees.

86.    Pursuant to and in furtherance of this unlawful scheme, Defendant Dunn has committed multiple, related predicate acts of extortion by refusing to authorize the release of Plaintiffs and the proposed Class from the Prison until they paid money towards the RHI initiation fee. Additionally, by unlawfully using the fear of arrest and jail by East Baton Rouge law enforcement or RHI officials, Dunn on numerous occasions extorted from Plaintiffs and the proposed Class a monthly supervision fee, along with fees for classes or other requirements imposed at the discretion of RHI employees.

87.    Defendant Dunn's use of RHI to extort money from arrestees assigned by Judge White constitutes a pattern of racketeering activity.

88.    These actions are a regular way of conducting the ongoing business of RHI.

89.    As a direct and proximate result of Defendant Dunn's racketeering activities, Plaintiffs and the proposed Class have been injured in their property in that they have paid and continue to pay RHI's fees due to the fear induced by Dunn and RHI employees' wrongful use and threats of arrest and jailing.

## V.    CLASS ACTION ALLEGATIONS

90.    Plaintiffs White and Ayo propose a class seeking damages as to the First, Second, Third, Fourth, Sixth, and Seventh Claims for Relief, pursuant to Fed. R. Civ. P. 23(a) and (b)(3). The Class is defined as: All individuals whom Judge White ordered to pretrial supervision by Defendant RHI who were subsequently supervised by RHI.

91.    A class action is a superior means, and the only practicable means, by which the named Plaintiffs and putative Class members can challenge Defendants' extortionate racketeering scheme and unlawful use and threat of wealth-based detention to extort fees from Plaintiffs and the Class.

92.    Class-action status under Rule 23(b)(3) is appropriate because questions of law or fact common to proposed Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

93.    Furthermore, as detailed below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

### A.  Requirements of Rule 23(a)

***Rule 23(a)(1) - Impracticability of Joinder Due to Numerosity***

94.     The precise size of the proposed Class is unknown by Plaintiffs, but it is substantial given the number of arrestees Judge White has assigned to RHI supervision in recent years.

95.     Court records indicate that over three hundred people were ordered to RHI supervision by Judge White in 2015 and 2016.

96.     Many of the proposed Class members are low-income individuals who will be difficult to identify and likely lack financial resources to bring an independent action or to be joined in this action.  Joinder of every member of the proposed Class would be impracticable.

***Rule 23(a)(2) - Commonality***

97.     The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the proposed Class.  The named Plaintiffs seek monetary relief from Defendants' extortionate and unconstitutional pretrial supervision practices, which violate the state and federally-protected rights of the Class members.

98.     Among the most important common questions of fact for the proposed Class are:

a.  Whether RHI, independent of Judge White, sets terms for an arrestee's release and the fees for its supervision services;

b.  Whether Dunn, RHI, and the Parish have made an agreement that individuals Judge White assigns to RHI may not be released from the Prison until they have paid RHI's initial fee, and RHI notifies the Prison of such payment;

c.  Whether RHI and the Parish enforce this agreement against the proposed Class without determining whether proposed Class members can afford to pay RHI's initial fee;

d. Whether the Parish has a policy, practice, or custom of detaining arrestees until obtaining RHI's permission to release them;

e. Whether RHI's standard contract provides for an initial fee and monthly fees;

f. Whether RHI's standard contract provides for arrest and jailing for failure to pay its fees;

g. Whether Dunn directs RHI employees to threaten to arrest and jail Proposed Class members who do not pay the monthly supervisory fees and other mandated fees to RHI;

99. Among the most important common questions of law for the proposed Class are:

a. Whether Defendant Dunn's operation of RHI through a pattern of racketeering activity, specifically, extorting money from Plaintiffs and the Proposed Class by unlawfully detaining them in the Prison until they pay RHI's initial fee, then threatening them with additional jailing if they fail to pay RHI monthly fees once released, violates the Louisiana and federal RICO Acts;

b. Whether East Baton Rouge Parish and RHI's practice of detaining Plaintiffs Ayo and White and members of the proposed Class in the Prison because they could not pay RHI's initial fee violates Plaintiffs and proposed Class members' rights under the Fourteenth Amendment to due process and equal protection;

c. Whether East Baton Rouge Parish's and RHI's detention of Plaintiffs and the proposed Class members after they posted bonds constituted an unreasonable seizure in violation of the Fourth Amendment; and

d. Whether RHI lacks any legal authority or right to collect fees from Plaintiffs and the proposed Class members.

*Rule 23(a)(3) - Typicality*

100.    The named Plaintiffs' claims are typical of the claims of the other members of the proposed Class, and they have the same interests in this case as all other proposed Class members that they represent.  Each of them suffers injuries from Defendants' failure to comply with state and federal law: they were each confined in jail for nonpayment of RHI's initial fee, without inquiry into their ability to pay, and then threatened with additional jailing if they did not pay RHI's subsequent fees and costs.  The answer to whether Defendants' scheme is unlawful will determine the claims of the named Plaintiff and every other proposed Class member.

101.    If the named Plaintiffs succeed in the claim that Defendants' policies and practices violate their federal and state rights, that ruling will likewise benefit every other member of the proposed Class.

*Rule 23(a)(4) - Adequacy*

102.    Plaintiffs will fairly and adequately represent the interests of the proposed Class they seek to represent.

103.    Plaintiffs have no interests separate from, or in conflict with, those of the proposed Class they seek to represent as a whole, and they seek damages, which Plaintiffs pursue on behalf of the entire proposed Class that they seek to represent.

**C.  The Requirements of Rule 23(b)(3)**

104.    Class certification of the proposed Class is appropriate because common questions of law and fact, including those listed above, predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

105.    The proposed Class seeks damages against Defendant Dunn, East Baton Rouge Parish, and RHI for jailing the proposed Class until its members were able to pay RHI's initial fee, engaging in a pretrial supervision scheme that allowed RHI, under Dunn's direction, to extort additional fees and costs from the proposed Class by wrongfully threatening future jail time and court sanctions for nonpayment.

D. **The Requirements of Rule 23(g)**

106.    Plaintiffs are represented by attorneys from the American Civil Liberties Union, the American Civil Liberties Union Foundation of Louisiana, and the Southern Poverty Law Center who have experience litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' practices and the relevant constitutional and statutory law.  Counsel has the resources, expertise, and experience to prosecute this action.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Federal Racketeering Influenced and Corrupt Organization Act**

**(18 U.S.C. § 1962(c))**

*Plaintiffs Ayo and White the Proposed Class against Cleve Dunn, Sr.*

107.    Plaintiffs incorporate and adopt Paragraphs 1 through 106 of this Complaint.

108.    Rehabilitation Home Incarceration ("RHI") is an enterprise engaged in and whose activities affect interstate commerce.  Defendant Cleve Dunn, Sr., is RHI's Executive Director.

109.    In violation of 18 U.S.C. § 1962(c), Defendant Dunn conducts RHI's affairs through a pattern of racketeering activity to illegally extort money from Plaintiffs Ayo and White and proposed Class Members.  Specifically, Dunn has made an agreement with Judge Trudy White for RHI to be Judge White's approved vendor for pretrial court supervision.  Dunn then

21

imposes conditions of supervision for arrestees assigned to RHI, including imposing fees for release and monthly supervision, and uses threats of incarceration for supervisees who do not comply with RHI's conditions or pay the required fees.

110.    Dunn has made a separate agreement with Prison officials that prohibits the release of pretrial arrestees assigned to RHI unless the arrestees pay RHI's initial fee and RHI sends confirmation to the Prison that the arrestee has paid said fee.

111.    Pursuant to and in furtherance of this unlawful scheme, Defendant Dunn has committed multiple, related predicate acts of extortion by refusing to authorize the release of Plaintiffs Ayo and White and the proposed Class from the East Baton Rouge Parish Jail until they paid the initial fee to RHI.  By unlawfully using the fear of arrest by East Baton Rouge law enforcement or RHI officials to coerce payment, Dunn additionally extorted from Plaintiffs Ayo and White and the proposed Class on numerous occasions a monthly monitoring fee of $225, along with other fees for classes required at the discretion of RHI employees.

112.    Defendant Dunn's use of RHI to extort money from arrestees assigned by Judge White constitutes a pattern of racketeering activity.

113.    As a direct and proximate result of Defendant Dunn's racketeering activities and his violations of 18 U.S.C. § 1962(c), Plaintiffs Ayo and White and the proposed Class have been injured in their property because they have paid and continue to pay RHI's fees from the fear induced by Dunn and RHI's wrongful threats of arrest and jailing.

### SECOND CLAIM FOR RELIEF

**Louisiana Racketeering Influence and Corrupt Organization Act**

**(LA. STAT. ANN. § 15:1353(C))**

*Plaintiff Ayo and White and the Proposed Class against Cleve Dunn, Sr.*

114.    Plaintiffs incorporate and adopt herein Paragraphs 1 through 106 of this Complaint.

115.    RHI is an enterprise that conducts business in the state of Louisiana. Defendant Cleve Dunn, Sr., is RHI's Executive Director.

116.    In violation of LA. STAT. ANN. § 15:1353(C), Defendant Dunn conducts RHI's affairs through a pattern of racketeering activity to illegally extort money from Plaintiffs Ayo and White and proposed Class Members. Specifically, Dunn has made an agreement with Judge Trudy White for RHI to be White's approved vendor for pretrial court supervision. Dunn then imposes conditions of supervision for arrestees assigned to RHI, including imposing fees for release and monthly supervision, and uses threats of incarceration for supervisees who do not comply with RHI's conditions or pay the required fees.

117.    Dunn has made a separate agreement with Prison officials that prohibits the release of pretrial arrestees assigned to RHI unless the arrestees pay RHI's initial fee and RHI sends confirmation to the Prison that the arrestee has paid said fee.

118.    Pursuant to and in furtherance of this unlawful scheme, Defendant Dunn has committed multiple, related predicate acts of extortion by refusing to authorize the release of Plaintiffs Ayo and White and the proposed Class from the East Baton Rouge Parish Jail until they secured and paid the initial fee to RHI. By unlawfully using the fear of arrest by East Baton Rouge law enforcement or RHI officials to coerce payment Dunn additionally extorted from Plaintiffs Ayo and White and the proposed Class on numerous occasions a monthly monitoring fee of $225 on behalf of RHI, along with other fees for classes or other services required at the discretion of RHI employees.

119.    Defendant Dunn's use of RHI to extort money from arrestees assigned by Judge White constitutes a pattern of racketeering activity under Louisiana law.

120.    As a direct and proximate result of Defendant Dunn's racketeering activities and violations of LA. STAT. ANN. § 15:1353(C), Plaintiffs Ayo and White and the proposed Class have been injured in their property in that they have paid and continue to pay RHI's fees from the fear induced by Dunn and RHI's wrongful threats of arrest and jailing.

## THIRD CLAIM FOR RELIEF

### Fourteenth Amendment to the Federal Constitution

### (Due Process and Equal Protection)

*Plaintiffs Ayo and White and the proposed Class against East Baton Rouge Parish and RHI*

121.    Plaintiffs incorporate and adopt herein Paragraphs 1 through 79 and 90 through 106 of this Complaint.

122.    The Fourteenth Amendment's guarantees of due process and equal protection prohibit jailing a person solely because of her inability to access money and make a monetary payment.

123.    Plaintiffs Ayo and White and the proposed Class have a fundamental interest in pretrial liberty under state and federal law.

124.    Defendant East Baton Rouge Parish's practice and policy—enforced through its final policy makers Gautreaux III and Grimes—to jail Plaintiffs and members of the Proposed Class until they could pay RHI the initial fee, without an affirmative inquiry into or findings concerning ability to pay, and without consideration of and findings concerning alternative conditions of release, violated Plaintiffs' and the proposed Class's fundamental rights under the

Fourteenth Amendment by detaining arrestees until they could pay the initial RHI fee and be released from the Prison.

125.    Defendant RHI also violated Plaintiffs' and the proposed Class's fundamental rights under the Fourteenth Amendment by detaining arrestees until they could pay the initial RHI fee and be released from the Prison, without an affirmative inquiry into or findings concerning ability to pay, and without consideration of and findings concerning alternative conditions of release.

## FOURTH CLAIM FOR RELIEF

### Fourth Amendment to the Federal Constitution

*Plaintiffs Ayo and White and the proposed Class against East Baton Rouge Parish and RHI*

126.    Plaintiffs incorporate and adopt herein Paragraphs 1 through 79 and 90 through 106 of this Complaint.

127.    The Fourth Amendment prohibits unreasonable searches and seizures—including the detention of individuals beyond expiration of a valid order of confinement, without probable cause.

128.    Defendant East Baton Rouge Parish's practice and policy—enforced through its final policy makers Gautreaux III and Grimes—and Defendant RHI's practice to continue to detain Plaintiffs and the proposed Class members, until they paid the initial RHI fee, without probable cause, and thus beyond the time Plaintiffs and the proposed Class members should have obtained pretrial release after posting bond, violated Plaintiffs proposed Class members' Fourth Amendment rights.

## FIFTH CLAIM FOR RELIEF

### Louisiana Unfair Trade Practices Act

**(La. Stat. Ann. § 51:1405)**

*Plaintiffs Ayo and White against RHI*

129.    Plaintiffs incorporate and adopt herein Paragraphs 1 through 79 of this Complaint.

130.    The Louisiana Unfair Trade Practices Act ("LUTPA") bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," La. Stat. Ann. § 51:1405, and authorizes recovery for any person who suffers an "ascertainable loss" as a result of this misconduct, whether of money or property, La. Stat. Ann. § 51:1409(A).

131.    Defendant RHI has violated LUTPA by entering an agreement whereby White assigns pretrial arrestees to RHI without a meaningful hearing as to whether RHI supervision is appropriate, and without allowing any other pretrial supervision agency to provide whatever supervisory conditions may be appropriate.

132.    Defendant RHI further violates LUTPA by imposing conditions of release and determining its supervision fees without any lawful authority, thereby allowing RHI to charge supervisees exorbitant rates without any market competition.  RHI then collects these fees by jailing or threatening to jail those under its supervision.

133.    RHI's practices offend public policy and are unethical, oppressive, unscrupulous, and substantially injurious.  They have directly and proximately caused Plaintiffs significant losses in both their money and property.

## SIXTH CLAIM FOR RELIEF

### Conversion

*Plaintiffs Ayo and White and the proposed Class against RHI*

134.    Plaintiffs incorporate and adopt herein Paragraphs 1 through 79 and 90 through 106 of this Complaint.

26

135.   Louisiana law protects against the intentional wrongful exercise or assumption of authority over another's goods, depriving her of permanent or indefinite possession.

136.   Through the scheme described above, RHI has engaged in the tort of conversion by charging and collecting fees that are not authorized by statute or by order of the JDC.

137.   RHI has also prevented Plaintiffs' and proposed Class members' release from jail until arrestees pay the initial fee, and RHI used the threat of future jailing to coerce payment of further fees.

138.   Thus, Plaintiffs and proposed Class members are forced to agree to pay, and do pay, these fees under threats of arrest, jail, bond revocation, and duress.

139.   As a result, RHI lacks any legal authority or right to collect and retain Plaintiffs' and the proposed Class members' initial and monthly fees.   RHI thus has intentionally and wrongfully deprived Plaintiffs and proposed Class members of their monetary property.

140.   RHI's practices have directly harmed Plaintiffs and proposed Class members in their loss of property.

## SEVENTH CLAIM FOR RELIEF

### Unjust Enrichment

*Plaintiffs Ayo and White and the proposed Class against RHI*

141.   Plaintiffs incorporate and adopt herein Paragraphs 1 through 79 and 90 through 106 of this Complaint.

142.   Article 2298 of the Louisiana Civil Code provides that "[a] person who has been enriched at the expense of another is bound to compensate that person."

143.    Through the scheme describe above, RHI has unjustly enriched itself at Plaintiffs' and proposed Class members' expense by requiring exorbitant and unnecessary fees that are collected under threat and that are not authorized by law.

## VII.    REQUESTED RELIEF

WHEREFORE, Plaintiffs requests the following relief:

144.    That the Court assume jurisdiction over this action;

145.    Certification of the Class under Fed. R. Civ. P. 23(a) and (b)(3);

146.    Award treble damages to each Plaintiff and Class member and against Defendant Dunn for his violations of the federal Racketeering Influenced and Corrupt Organization statutes (Count I);

147.    Award the greater of treble damages or $10,000 to each Plaintiff and Class member and against Defendant Dunn for his violations of the Louisiana Racketeering Influenced and Corrupt Organization statutes (Count II);

148.    Award damages to Plaintiffs and Class members and against Defendants East Baton Rouge Parish and RHI for these Defendants' jailing of Plaintiffs and Class members because of nonpayment of RHI's initial fee without properly considering Plaintiffs' ability to pay, in violation of Plaintiffs' and Class members' Fourteenth Amendment right to Equal Protection and Due Process (Count III);

149.    Award damages to Plaintiffs and Class members and against Defendants East Baton Rouge Parish and RHI for their jailing of Plaintiffs and Class members for unlawfully prolonging Plaintiffs' and Class members' detention at the Prison after posted bond, in violation of Plaintiffs' and class members' right to be free from unreasonable seizures under the Fourth Amendment (Count IV);

150.    Award damages to Plaintiffs and against Defendant RHI for RHI's violations of the LUTPA (Counts V);

151.    Award damages to Plaintiffs and proposed Class members and against Defendant RHI for RHI's conversion and unjust enrichment (Counts VI and VII);

152.    Award prevailing party costs, including attorney fees;

153.    Grant other relief as the Court deems just and appropriate.

DATED this 7th day of August, 2017                    Respectfully submitted,

                                                      /s/ Ivy Wang
                                                      Ivy Wang
                                                      *On Behalf of Plaintiffs' Counsel*

                                                      Ivy Wang, La. Bar No. 35368
                                                      SOUTHERN POVERTY LAW CENTER
                                                      1055 St. Charles Avenue, Suite 505
                                                      New Orleans, Louisiana 70130
                                                      P: 504-228-7279
                                                      F: 504-486-8947
                                                      E: ivy.wang@splcenter.org

                                                      Emily Early, ASB-8536B18H*
                                                      SOUTHERN POVERTY LAW CENTER
                                                      150 East Ponce de Leon Ave., Suite 340
                                                      Decatur, Georgia 30037
                                                      P: 404-221-4036
                                                      F: 404-221-5857
                                                      E: emily.early@splcenter.org

                                                      Sara Zampierin, ASB-1695-S34H*
                                                      SOUTHERN POVERTY LAW CENTER
                                                      400 Washington Avenue
                                                      Montgomery, Alabama 36104
                                                      P: 334-956-8200
                                                      F: 334-956-8481
                                                      E: emily.early@splcenter.org
                                                      E: sara.zampierin@splcenter.org

Bruce Hamilton, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
P: 504-522-0628
F: 504-613-6511
E: bhamilton@laaclu.org

Brandon Buskey (ASB-2753-A50B)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
P: (212) 549-7364
E: bbuskey@aclu.org

*application for pro hac vice pending

**Attorneys for Plaintiffs**