THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

HENRY AYO, and KAIASHA WHITE
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.

CLEVE DUNN, Sr., *et al.*

    Defendants.

Case No. 3:17-cv-526-SDD-EWD

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS CLEVE DUNN, SR., AND REHABILITATION HOME INCARCERATION'S MOTION TO DISMISS**

Plaintiffs Henry Ayo and Kaiasha White filed this civil rights action on behalf of themselves and others who, as a result of Defendants Rehabilitation Home Incarceration's ("RHI"), Cleve Dunn, Sr.'s ("Dunn"), and Sheriff Sid J. Gautreaux's ("Gautreaux") scheme to unlawfully profit from people under their pretrial supervision, were kept in jail unlawfully until they could afford to purchase and maintain their freedom by paying RHI substantial money in purported initial and monthly supervision fees. Like others who were ordered to be supervised pretrial by RHI, Plaintiffs, once released from detention, were charged hundreds of dollars per month and threatened with arrest and re-incarceration by RHI to coerce them and their families to scrape together the money for these payments. These fees were not ordered by a court, but rather set by RHI at its sole discretion. Mr. Dunn and RHI, in turn, were able to extract thousands of dollars from their supervisees. Accordingly, Plaintiffs bring claims against Mr. Dunn under federal and Louisiana Racketeering Influenced and Corrupt Organizations Acts (collectively, "RICO Acts") for operating RHI through a pattern of racketeering activity to unlawfully extort money from Plaintiffs and proposed class members. Plaintiffs also bring claims against RHI under the Fourth and Fourteenth Amendments for detaining Plaintiffs and members of the proposed class beyond their judicially-ordered confinement, without regard to ability to pay.[1]

Mr. Dunn and RHI now move to dismiss for failure to state a claim. Their motion must fail, however, because their arguments ignore the actual facts and legal elements of the claims that Plaintiffs pleaded. First, Mr. Dunn and RHI argue that the Amended Complaint fails to plead facts supporting fraud, misrepresentation, and collusion. None of these is the basis for Plaintiffs' claims. Defendants also contend that Plaintiffs fail to allege Mr. Dunn caused Plaintiffs' injuries and that he is not personally liable for the conduct of RHI. Plaintiffs' pleadings, however,

---

[1] Counts V, VI, and VII also assert a claim under the Louisiana Unfair Trade Practices Act and state law claims of conversion and unjust enrichment against RHI. Nothing in the Motion to Dismiss addresses these claims and, in response, this Brief does not address them. Thus, the state law claims against RHI must stand.

1

clearly allege the elements of Mr. Dunn's liability as a "person" under the RICO Acts, as well as the injuries he caused Plaintiffs. Second, Defendants argue that RHI lacks authority to arrest or set bail and was not the "moving force" behind Plaintiffs' constitutional violations—an argument which clearly disregards the allegations that RHI determined when Plaintiffs and proposed class members were released from jail and the financial supervision terms on which their continued freedom were based. For these reasons, as detailed below, the Motion should be denied.

## I. FACTUAL BACKGROUND

RHI is a private company that offers pretrial supervision services in Baton Rouge, Louisiana. Amended Complaint, Doc. 2 ("Am. Compl."), ¶¶ 19-20. RHI is owned and operated by the Dunn family, including Defendant Cleve Dunn, Sr. *Id*. ¶ 21. RHI is the sole approved vendor for pretrial supervision for Judge Trudy White of the Nineteenth Judicial District Court of Louisiana ("Judge White"). *Id*. ¶ 22. At Mr. Dunn's direction, RHI profits by requiring people assigned by Judge White to its supervision to pay a $525 initial fee and a $225 monthly supervision fee. *Id*. ¶¶ 37, 42, 49, 85. These fees are not ordered by Judge White. Rather, they are set entirely by RHI. *Id*. ¶ 34. Through an agreement with Mr. Dunn and RHI, Sheriff Gautreaux enforces a policy whereby the East Baton Rouge Parish Prison ("Prison") detains supervisees until RHI confirms that it has received its initial payment. *Id*. ¶ 37. Those who cannot immediately pay the initial fee may wait in jail for days or weeks until they can pay all or a portion of the fee. *Id*. ¶ 39. Mr. Dunn and RHI thus rely on Sheriff Gautreaux to enforce payment of RHI's initial fee.

In the summer of 2016, Mr. Ayo appeared before Judge White after his arrest on suspicion of attempting to steal an air conditioning unit from a vacant property. *Id*. ¶ 50. As Mr. Ayo's bond order reflects, Judge White ordered Mr. Ayo's release upon posting of an $8,000 bond and under the condition that he be supervised by Mr. Dunn for ninety days. *Id*. ¶¶ 21, 31.

Judge White did *not* require Mr. Ayo to pay fees to RHI. Nor did she order Sheriff Gautreaux to keep Mr. Ayo imprisoned until he paid RHI's $525 initial fee. *Id.* ¶ 21. During Mr. Ayo's appearance before Judge White, she did not set the terms of RHI's supervision or mention paying fees to RHI. *Id.* ¶ 52.

Mr. Ayo suffered in jail for two months until his wife saved enough money to pay the bail premium. However, after agreeing to post bail, the bondsperson told Mr. Ayo's wife that she had to call RHI. *Id.* ¶ 55. When she called RHI, an RHI employee named Frederick Hall told her that she had to pay approximately $500 to RHI before Mr. Ayo could be released from the Prison. Because she could not pay the entire $500 up front, Mr. Hall agreed to accept $225 initially, on condition that she pay the rest later. *Id.* ¶ 56. Only after this initial payment and notification from RHI did the Sheriff release Mr. Ayo. *Id.* ¶ 57; *see also id.* ¶¶ 6, 26, 35-36.

On August 8, 2016, Ms. White appeared before Judge White, who set her bond at $4,000 and told her that she also must report to RHI. *Id.* ¶¶ 64-65. Judge White did not set any terms of the RHI supervision or require that Ms. White pay an initial fee to RHI. *Id.* ¶ 66. Nevertheless, because Ms. White could not pay RHI the Sheriff detained her for a month until her mother arranged for a bail bond and paid RHI a portion of its fee with her Social Security check. *Id.* ¶¶ 67-68. She agreed to pay RHI the remainder of its fee after Ms. White was released. *Id.* ¶ 69.

Mr. Dunn's scheme continues for those RHI supervisees who manage to purchase their release. RHI requires supervisees to sign a contract providing for a $225 monthly fee. *Id.* ¶ 42. The contract allows RHI to unilaterally impose the supervision conditions it sees fit, including a curfew which RHI may enforce by requiring supervisees to pay for and wear a GPS tracking device, classes taught by RHI employees that also require payment, mental evaluations, or community service. *Id.* at 41-46. The contract further informs supervisees that if they violate any

condition of supervision an RHI employee may arrest them or report them to law enforcement for arrest. *Id.* ¶ 47. Indeed, Mr. Dunn and his "Monitors"—the RHI representatives who supervise the supervisees—enforce their scheme by threatening supervisees with arrest for failing to pay their fees, without regard to whether supervisees can afford those fees, coercing supervisees and their families to scrape together money to pay RHI out of fear of re-arrest and bond revocation. *Id.* ¶ 48.

Plaintiffs' experiences illustrate the impact of these contractual and actual threats on RHI supervisees. Mr. Ayo and his wife paid RHI approximately $1,000 over the course of Mr. Ayo's supervision, including fees for an ankle monitor that RHI never provided. *Id.* ¶¶ 61, 63. Much of this they paid by sending money orders of $50 to $100 through the mail. *Id.* ¶ 60. These payments came with great sacrifice, forcing the Ayos to delay payments on essential utilities like water and electricity to avoid Mr. Ayo being rearrested. *Id.* ¶ 60. After Mr. Ayo's case ended, RHI continued to call and demand an additional $200 that it claimed he owed. *Id.* ¶ 63.

In Ms. White's case, an RHI employee explicitly threatened to have her arrested if she did not pay the outstanding balance on an RHI class that cost $55 per month, even though no RHI employee informed her that she had to take the class. *Id.* ¶ 77. Ms. White soon after began receiving letters from RHI asserting that she owed approximately $800, a sum she cannot afford. *Id.* ¶ 79. Ms. White has to date paid $300 to RHI, and she resorted to having her son deliver her last payment out of fear RHI would have her arrested. *Id.* ¶ 76.

On the basis of these facts, on August 7, 2017, Plaintiffs filed this action on behalf of themselves and a putative class of similarly situated individuals. Compl., Doc. 1. After being served, Doc. 38-1, RHI and Dunn failed to timely file any response or answer by their December 13, 2017, deadline. Finally, on January 4, 2018, they sought an out-of-time extension of time to

answer, Doc. 34, which the Court granted until February 2, 2018—58 days after their answer was originally due, Doc. 35. Dunn and RHI *again* missed their deadline to respond. On February 5, 2018, Plaintiffs requested the Clerk's entry of default against Dunn and RHI. Doc. 38.

On February 6, 2018, four days after their response was due, Defendants moved the Court for leave to file an out-of-time motion to dismiss. Doc. 41. The Clerk entered default against RHI and Dunn two days later. Doc. 42. This Court gave Defendants leave to file the instant motion on February 14, 2018. Doc. 44. RHI and Dunn, however, have not moved to set aside the clerk's entry of default under Rule 55(c) of the Federal Rules of Civil Procedure.[2]

## II. LEGAL ARGUMENT

### A. Standard of Review

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint simply needs to contain enough factual allegations to render the claims "plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). The facts pled need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555.

### B. Plaintiffs Assert Plausible Claims for Relief Against Cleve Dunn

Under the federal RICO statute, it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c). Plaintiffs must plead three elements:

---

[2] The Court may set aside a default for "good cause" shown. Fed. R. Civ. P. 55(c). In so doing, the Court "should consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented"; "[w]illful failure alone may constitute sufficient cause" to deny a motion to vacate the default entry. *In re Dierschke*, 975 F.2d 181, 183, 184–85 (5th Cir. 1992). Dunn and RHI have not moved to vacate the entry of default, and have made no showing as to whether default was willful. Thus, the present Motion does not cure their default status.

5

"(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).[3] Plaintiffs have alleged each of the elements under the federal and Louisiana RICO Acts.

*1. Dunn is a "Person" Liable under State and Federal RICO*

Mr. Dunn argues erroneously that he cannot be sued under RICO because he is "personally distinct" from RHI. Doc. 46-1 at 7. Federal and state statutes, however, *require* that RICO persons are distinct from RICO enterprises. To establish RICO liability under the first element, "a plaintiff must prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).

Applied to a natural person such as Mr. Dunn, the Supreme Court has held that "an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute." *Id*. at 163. This is because RICO "both protects a legitimate enterprise from those who would use unlawful acts to victimize it, and also protects the public from those who would unlawfully use an enterprise (whether legitimate or illegitimate) as a vehicle through which unlawful . . . activity is committed." *Id*. at 164 (quotations and citation omitted); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000) ("Although a defendant may not be both a person and an enterprise, a defendant may be both a person and a part of an enterprise. In such a case, the individual defendant is distinct from the organizational entity." (citation

---

[3] Louisiana's RICO statute largely tracks the federal law, absent the requirement of an interstate nexus. The Supreme Court of Louisiana has therefore held that "[b]ecause Act 727 [the Louisiana Racketeering Law] was apparently patterned after 18 U.S.C. § 1961 et seq. (the Racketeer Influenced and Corrupt Organizations Act), federal decisions in this area are persuasive." *State v. Nine Sav. Accounts*, 553 So. 2d 823, 825 (La. 1989) (parenthetical original); *see also State v. Touchet*, 99-1416 (La. App. 3 Cir. 4/5/00); 759 So. 2d 194, 197 ("Because of the parallel between the RICO and Louisiana's statutes, federal decisions in this area are persuasive.").

6

omitted)). As these cases show, Plaintiffs have clearly alleged that Mr. Dunn, as an officer of RHI, is a RICO "person" who is distinct from RHI, the RICO enterprise—a fact that even Mr. Dunn contends. Doc. 46-1 at 7 ("[Dunn] is personally distinct from RHI[, which] . . . is an entity of its own . . . .").

2. *Plaintiffs Have Adequately Alleged Dunn's Racketeering Activity*

Mr. Dunn argues that Plaintiffs failed to allege that he committed fraud, misrepresentation, or collusion. This argument is entirely beside the point, because Plaintiffs do not base their RICO claim on these acts. Instead, Plaintiffs allege that Mr. Dunn's conduct amounts to extortion under the RICO statute's three sections defining that crime—(1) subsection (A) of the same statute (state law crimes, including extortion); (2) section 1951 (the Hobbs Act); and (3) section 1952 (the Travel Act). Each of these sections and relevant acts essentially prohibits the unlawful use of fear for pecuniary gain. *See* 18 U.S.C. § 1961(1)(A) (defining as predicate act "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year");[4] *United States v. Nakaladski*, 481 F.2d 289, 298 (5th Cir. 1973) (extortion under Hobbs Act requires proof defendant induced his victim to part consensually with property through wrongful use of actual or threatened force, violence or fear); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409-10 (2003) (Travel Act prohibits "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats" (quoting *United States v. Nardello*, 393 U.S. 286, 290 (1969))).[5]

---

[4] Louisiana law also defines extortion as "the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description." La. Stat. Ann. § 14:66.

[5] Both the Hobbs and Travel Acts also impose a *de minimis* interstate commerce requirement. *See, e.g.*, *United States v. Villareal*, 764 F.2d 1048, 1052 (5th Cir. 1985) (interstate commerce requirement satisfied under Hobbs Act because those extorted used credit cards whose bills were sent through interstate mail); *United States v. Heacock*, 31 F.3d 249, 254 (5th Cir. 1994) (holding that Travel Act criminalizes use of U.S. mail system with intent to distribute proceeds of unlawful activity, even if purely intrastate). Plaintiffs allege that Mr. Dunn, through RHI, sent letters to

7

Plaintiffs' allegations satisfy each of these definitions of extortion. Dunn and his agents communicate to arrestees that they will not be released from jail until RHI's initial fee is paid. This threat of continued, unlawful detention constitutes a threat under the federal and Louisiana statutes and the wrongful use of fear under the Hobbs and Travel Acts. Supervisees released to RHI's supervision are subsequently threatened by Mr. Dunn, through RHI, with bond revocation and arrest if they fail to pay RHI's monthly fee. Mr. Dunn does not mention, let alone contest, Plaintiffs' extortion allegations, opting instead to assert that he has not committed fraud, misrepresentation, or collusion. Plaintiffs, however, never once allege fraud, misrepresentation, or collusion in their pleadings. Thus, Plaintiffs have adequately alleged Dunn's racketeering activity.

3. *RHI is an Enterprise*

Plaintiffs also satisfy the third RICO element by naming RHI as an enterprise. "An enterprise is a group of persons or entities associated together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). RHI is registered as a non-profit corporation and thus may properly be named as a RICO enterprise. Mr. Dunn does not contest this element.

**C. Plaintiffs Allege Plausible Claims for Relief Against RHI**

RHI's asserted grounds for dismissal—that RHI is a private corporation, without judicial power, and cannot be liable for any constitutional violations because its policy was not the "moving force" behind the alleged violations—are also without merit. Plaintiffs plausibly allege

---

supervisees demanding payment, and received the payments he extorted from them, through the mail, satisfying the interstate commerce requirement under the Hobbs and Travel Acts. Doc. 2 at ¶¶ 60, 78.

8

that RHI's policies, along with those of Sheriff Gautreaux, were the moving force behind Plaintiffs' constitutional injuries.[6]

Conduct constitutes a "moving force" if there is a "direct causal link" between the conduct and the alleged constitutional injury. *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001). In other words, the alleged policy or practice must be a "cause in fact of the deprivation of rights inflicted." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citation omitted).

The Amended Complaint alleges that RHI arranged with Sheriff Gautreaux to require the Prison to first obtain confirmation from RHI before releasing Plaintiffs and proposed class members who were ordered to submit to RHI supervision, and that RHI did not give this confirmation until Plaintiffs and proposed class members made arrangements to pay RHI's initial fee. Doc. 2 ¶ 37. Under this policy of RHI (and of Sheriff Gautreaux), if an individual could not make the initial payment to RHI, she had to wait in jail for days or weeks until she could pay all or a portion of the fee. *Id.* ¶ 39. As Mr. Ayo's and Ms. White's experiences under the policy make clear, RHI, along with Sheriff Gautreaux, enforced this policy independently of Judge White's bond orders and irrespective of whether arrestees had posted bond.

A spate of recent decisions, including from the U.S. Court of Appeals for the Fifth Circuit, hold that continued detainment of individuals after they are eligible for release satisfies the moving force requirement. *See, e.g.*, *Jauch v. Choctaw Cty.*, 874 F.3d 425, 435–36 (5th Cir. 2017) (policy of detaining defendants on capias warrants until court that issued warrant next

---

[6] To the extent RHI's argument can be interpreted as challenging its status as a "state actor," this argument must also be rejected. *See, e.g.*, *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 924 (1982); *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003). RHI does not engage with these cases or the tests enumerated therein. But, in short, because RHI exercises privileges granted by governmental actors (Judge White and Sheriff Gautreaux), performs services traditionally provided by the government (e.g., setting conditions of relief, determining release from jail), and enjoys a highly interdependent relationship with these governmental actors, RHI is a state actor properly subject to suit.

9

convened caused violation of pretrial defendant's Fourteenth Amendment rights); *see also Mercado v. Dallas Cty.*, 229 F. Supp. 3d 501, 521 (N.D. Tex. 2017) (Dallas County policy or practice of detaining individuals with immigration holds who were otherwise cleared for release was moving force for plaintiffs' § 1983 claim); *Orellana v. Nobles Cty.*, 230 F. Supp. 3d 934, 947 (D. Minn. 2017) (Plaintiff's assertion that county's adherence to "official policy of continuing to detain individuals beyond when they are eligible for release solely because of an ICE detainer caused the constitutional violation" is "well taken"); *Gant v. Cty. of Los Angeles*, 765 F. Supp. 2d 1238, 1263 (C.D. Cal. 2011) ("A policy under which wrongfully arrested detainees are not immediately released was the 'moving force' behind the violation of [plaintiff's] Fourteenth Amendment right."), *aff'd in part, rev'd in part on other grounds*, 772 F.3d 608 (9th Cir. 2014), and *aff'd*, 594 F. App'x 335 (9th Cir. 2014).

As with the above-cited cases, Plaintiffs have adequately alleged that RHI's policy of detaining people entitled to release until the Prison received approval from RHI caused Plaintiffs' injuries, and that RHI's policy was a moving force behind the violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments.

Finally, RHI's argument that Plaintiffs fail to show how it committed fraud or collusion also fails because neither fraud nor collusion is part of or related to Plaintiffs' claims.

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

Dated this 7th day of March, 2018.

Respectfully submitted,

/s/ Ivy Wang
Ivy Wang
*On Behalf of Plaintiffs' Counsel*

Ivy Wang, La. Bar No. 35368
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue, Suite 505
New Orleans, Louisiana 70130

10

P: 504-228-7279
F: 504-486-8947
E: ivy.wang@splcenter.org

Emily Early, ASB-8536B18H*
SOUTHERN POVERTY LAW CENTER
150 East Ponce de Leon Ave., Suite 340
Decatur, Georgia 30037
P: 404-221-4036
F: 404-221-5857
E: emily.early@splcenter.org

Sara Zampierin, ASB-1695-S34H*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
P: 334-956-8200
F: 334-956-8481
E: sara.zampierin@splcenter.org

Bruce Hamilton, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
P: 504-522-0628
F: 504-613-6511
E: bhamilton@laaclu.org

Brandon Buskey (ASB-2753-A50B)*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
P: 212- 549-7364
F: 212-549-2654
E: bbuskey@aclu.org

*admitted pro hac vice*

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2018, I electronically filed the foregoing through the Court's CM/ECF filing system, and that by virtue of this filing notice will be sent electronically to:

Dele A. Adebamiji
Felicia E. Adebamiji
P.O. Box 80712
Baton Rouge, LA 70898
Counsel for Cleve Dunn, Sr., and Rehabilitation Home Incarceration

Mary G. Erlingson
Tara L. Johnston
Catherine S. St. Pierre
301 Main Street, Ste. 2110
Baton Rouge, LA 70801
Counsel for Sid J. Gautreaux, III

/s/ Ivy Wang
Ivy Wang