HENRY AYO, and KAIASHA WHITE           CIVIL ACTION
on behalf of themselves
and all others similarly situated           17-526-SDD-EWD

VERSES

CLEVE DUNN Sr., REHABILITATION HOME
INCARCERATION, SID J.

## RULING

Before the Court is a *Motion to Dismiss*[1] pursuant to Federal Rule of Civil Procedure 12(b)(6) ("FRCP 12(b)(6)") for failure to state a claim upon which relief can be granted filed by Defendant, Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge Parish ("Defendant" or "Sheriff"). Plaintiffs, Henry Ayo and Kaiasha White, ("Plaintiffs") filed an *Opposition*,[2] and Movant has filed a *Reply*.[3] For the reasons stated herein, the Motion will be granted.

### I. BACKGROUND

**A. Factual Allegations**

Plaintiffs, Henry Ayo ("Ayo") and Kaiasha White ("White"), bring claims on behalf of themselves and others similarly situated under 42 U.S.C. § 1983 ("Section 1983"), against Sid J. Gautreaux, in his official capacity as Sheriff of East Baton Rouge Parish. Plaintiffs also assert claims against Cleve Dunn, Sr. ("Dunn") and Rehabilitation Home Incarceration ("RHI"), under Federal and State Racketeering Influenced Corrupt

---

[1] Rec. Doc. 17.
[2] Rec Doc. 23 (duplicate filed at Rec. Doc. 29).
[3] Rec. Doc. 37.
Document Number: 45937

Organization Acts ("RICO"), the Louisiana Unfair Trade Practices Act ("LUTPA"), and state tort claims for conversion and unjust enrichment.[4]

According to the *Amended Complaint*,[5] Plaintiffs were arrested in East Baton Rouge Parish and taken to the East Baton Rouge prison ("prison").[6] The Plaintiffs appeared before 19th Judicial District Court ("JDC") Judge Trudy White ("Judge White") "for a hearing to determine probable cause for detention and to set bond"[7] on the day following their respective arrests. Ayo, who was arrested on a charge of Simple Burglary of an Inhabited Dwelling and related offenses, alleges that "Judge White set his bond at $8,000, informed him of the charges, and assigned him to RHI supervision. White informed him that someone from RHI would visit him at the Prison to explain the process."[8] The *Amended Complaint* incorporates Ayo's Bond Order entered by Judge White.[9] The Bond Order directs the Sherriff to release Ayo "upon a good and solvent bond conditioned as the law directs in the total sum of $8,000."[10] The Order further provides: "You shall be under the supervision of RHI-Cleve Dunn @ 364-7753 for a period of 90 days to ensure compliance with this order upon release on bond."[11] Finally, the Order directs that "You shall not be released on bond without first meeting with your bond supervisor."[12] Plaintiff White alleges that, following an "arrest on charges of simple

---

[4] Rec. Doc. 2.
[5] *Id.*
[6] The Plaintiffs' arrests and subsequent State Court proceedings are unrelated.
[7] Rec. Doc. 2, ¶27, 50, 64.
[8] Rec. Doc. 2, ¶51.
[9] Rec. Doc. 2, ¶31.
[10] *Id.*
[11] *Id.*
[12] *Id.*

and aggravated battery…Judge White set her bond at $4,000 and informed her that she would also have to report to RHI."[13]

Plaintiffs claim that the Sheriff violated their constitutional rights secured under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that the Sherriff is the final policy maker responsible for the detention and release of prisoners in East Baton Rouge Parish and that, "[t]hrough an agreement with RHI," the Sherriff "created and enforce[d] a policy that the Prison will not release arrestees from the Prison until it receives permission from RHI—permission that comes only after RHI is satisfied with the initial payment made."[14] Plaintiffs allege that continued detention until an arrestee can "pay the initial RHI fee and be release from the Prison" violates their fundamental liberty interests secured by the Fourteenth Amendment[15] and constitutes an unconstitutional seizure in violation of the Fourth Amendment.[16]

Urging dismissal for failure to state a claim under FRCP 12(b)(6), the Sherriff argues that, "[e]ven if the Sheriff created and enforced a policy that the Prison will not release arrestees 'until it receives permission from RHI-permission that comes only after RHI is satisfied with the initial payment made,' Plaintiffs have not alleged that the policy is the moving force behind the violation of their constitutional right and have failed to show a direct causal link between the alleged policy and the violation."[17]

---

[13] Rec. Doc. ¶ 64, 65.
[14] Rec. Doc. 2, ¶8.
[15] Rec. Doc. 2, ¶ 124.
[16] Rec. Doc. 2, ¶ 128.
[17] Rec. Doc. 17-1.

Document Number: 45937

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[18] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[19] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[20] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[21] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[22] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] In order to satisfy the plausibility standard, the plaintiff must show "more than

---

[18] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[19] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[20] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[21] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[23] *Twombly*, 550 U.S. at 570.

a sheer possibility that the defendant has acted unlawfully."[24] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[25] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[26]

### B.  Section 1983 Claims against the Sheriff

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[27] Accordingly, the claims against the Sheriff in his official capacity are, in effect, claims against the municipal entity he represents, which is East Baton Rouge Parish.[28]

To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence addressing municipality or local government liability under Section 1983.[29] Municipal liability under Section 1983 requires proof of three elements: 1) an official policy or custom, of which, 2) a policymaker can be charged with actual or constructive knowledge, and 3) a violation of constitutional rights whose "moving force" is the policy or custom.[30]

In order for a municipality to be held liable under Section 1983, the plaintiff must

---

[24] *Iqbal*, 556 U.S. at 678.
[25] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[26] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[27] *Monell v. New York City Dep't of Soc. Serv, of City of New York*, 436 U.S. 658, 691 n. 55 (1978); *Burge v. Parish of St. Tammany,* 187 F. 3d 452,466 (5th Cir. 1999)
[28] *Graham,* 473 U.S. at 165; *see also Bellard v. Gautreaux*, No. CIV.A. 08-627, 2010 WL 3523051, at *4 (M.D. La. Sept. 3, 2010) amended in part, No. CIV.A. 08-627, 2010 WL 4977480 (M.D. La. Dec. 2, 2010), *affirmed*, 675 F.3d 454 (5th Cir. 2012) *and affirmed*, 675 F.3d 454 (5th Cir. 2012).
[29] *Id*. at 470.
[30] *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

identify an unconstitutional municipal policy or custom that caused his/her injury.[31]

It is not enough for a Section 1983 plaintiff to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through deliberate conduct, the municipality was a 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.[32]

Movant urges dismissal arguing that Plaintiffs fail to plead plausible allegations that the Sheriff's detention and release policies and/or practices were the "moving force" behind the constitutional violation. The following are the entirety of the allegations against the Sheriff:

2.

This scheme is arranged by Cleve Dunn, Sr. ("Dunn"), RHI's Chief Executive Officer, and East Baton Rouge Parish Sheriff Office officials operating the East Baton Rouge Parish Prison (the "Prison"), who, at RHI's direction, refuse to release individuals ordered to RHI supervision until they pay the initial fee.

15.

Defendant Sid J. Gautreaux, III is the Sheriff of East Baton Rouge Parish. He is sued in his official capacity.

26.

Individuals arrested for criminal offenses in East Baton Rouge Parish are initially taken to the East Baton Rouge Parish Prison (the "Prison"), which is staffed and operated by the East Baton Rouge Sheriff, Defendant Gautreaux.

---

[31] *Monell v. Dep 't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Parm v. Shumate,* 513 F. 3d 135, 142 (5th Cir. 2007), cert denied, 129 S.Ct. 42, 172 L.Ed.2d 21 (2008).
[32] *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, L.Ed.2d 626 (1997).

35.

Sheriff Sid J. Gautreaux III has authority over, and responsibility for, operating the Prison. LSA-R.S. § 13:5539(C) ("Each sheriff shall be the keeper of the public jail of his parish . . ."). Gautreaux and Prison Warden Dennis Grimes ("Grimes") have final policymaking authority on jailing and releasing arrestees for the East Baton Rouge Sheriff.

36.

Through an agreement with RHI, Gautreaux and Grimes, as final policymakers for the East Baton Rouge Parish Sheriff with respect to jailing and releasing arrestees at the Prison, created and enforce a policy that the Prison will not release arrestees from the Prison until it receives permission from RHI—permission that comes only after RHI is satisfied with the initial payment made.

124 & 128.

Defendant Gautreaux's practice and policy—enforced through Gautreaux and Grimes as final policymakers for the Sheriff on jailing and releasing practices at the Prison—to jail Plaintiffs and members of the Proposed Class until they could pay RHI the initial fee, without an affirmative inquiry into or findings concerning ability to pay, and without consideration of and findings concerning alternative conditions of release, violated Plaintiffs and the proposed Class's fundamental rights under the Fourteenth Amendment by detaining arrestees until they could pay the initial RHI fee and be released from the Prison.[33]

Plaintiffs plead the existence of a "scheme" between the Sherriff and the RHI principal Cleve Dunn.[34] Plaintiffs also plead that there is an "agreement" whereby "the Prison will not release arrestees from the Prison until it receives permission from RHI—permission that comes only after RHI is satisfied with the initial payment made."[35] However, these conclusory allegations of a "scheme" and an "agreement" are unsupported by the detailed factual allegations of the *Amended Complaint*, set forth in their entirety above. Plaintiffs fail to plead facts which would allow the Court to draw an

---

[33] Rec. Doc. 2.
[34] Rec. Doc. 2, ¶ 2.
[35] Rec. Doc. 2, ¶ 36.
Document Number: 45937

inference that the Sherriff was the moving force behind the constitutional violations.

Plaintiff Ayo's Bond Order incorporated at paragraph 31 of the Amended Complaint provides as follows: [36]

- Authorizes release "upon a good and solvent bond conditioned as the law directs in the total sum of $8,000."
- "You shall be under the supervision of RHI-Cleve Dunn @ 364-7753 for a period of 90 days to ensure compliance with this order upon release on bond."
- "You shall not be released on bond without first meeting with your bond supervisor." [37]

Nothing in the Bond Order requires the payment of initial fees to RHI as a condition for release. Plaintiffs allege that "arrestees typically only learn that they must pay this initial fee to be released when they or their family members attempt to post bail or when they first meet with RHI at the Prison."[38] Again, this conclusory allegation is unsupported by the facts pled. Neither Ayo nor White allege that they attempted to post bail but were refused release by the Sheriff until RHI was paid a fee.

Ayo alleges that he had to stay in prison two (2) months because "he and his wife could not afford the bond amount and to pay RHI".[39] There is no allegation that Ayo attempted to post the bond amount but was refused release. Likewise, there is no allegation that a Sheriff's office employee or Deputy told Ayo that payment of initial fees to RHI was a condition of release. Rather, the *Amended Complaint* makes plain that Ayo's belief that paying RHI was a condition of release came from an RHI representative - a "Mr. Hall ("Hall") - [who] informed [Ayo's wife] that she still had to pay approximately

---

[36] Rec. Doc. 2, ¶ 31.
[37] *Id.*
[38] Rec. Doc. 2, ¶38.
[39] Rec. Doc. 2, ¶54.

Document Number: 45937

$500 to RHI for Mr. Ayo to be released from the Prison."[40]

Plaintiff White alleges that "the bondswoman told Ms. White that the bondswoman and RHI would split the payment, and that a portion would go towards RHI's initial fee."[41] White further alleges that, "[t]he next day, RHI employee Hall went to the prison and met with Ms. White [and] informed her that she would have to pay the remainder of the initial fee and the monthly supervision fee after she was released."[42] At that time, Hall presented RHI's contract to White for her signature. Plaintiffs incorporate what is alleged to be "a copy of [RHI's] redacted, standard contract" as a part of the *Amended Complaint*.[43] Notably, the RHI contract, which White signed, provides that "payment is due *upon release* of the client from incarceration."[44]

On these facts, the Court finds no plausible basis to support the conclusory allegations that the Sheriff was "in agreement" or part of a "scheme" with RHI. At best, the factual allegations suggest that Plaintiffs believed that RHI's initial fees had to be paid as a condition of release because of what they were allegedly told by RHI or bondsmen. Under the circumstances as pled, it is understandable that the Plaintiffs believed what RHI told them, but there are simply no allegations that allow the Court to draw the reasonable inference that the Sheriff was a moving force behind the alleged constitutional violations. At most, the allegations suggest that the Bond Order created an indicia of authority in RHI which RHI then exploited to extract fees in contravention of the plain language of its own contract with Plaintiffs. The law presumes that Plaintiffs read and

---

[40] Rec. Doc. 2, ¶56.
[41] Rec. Doc. 2, ¶68.
[42] Rec. Doc. 2, ¶69.
[43] Rec. Doc. 2, ¶41
[44] *Id.* (emphasis added).

understood RHI's fees when they signed the contract with RHI.

### III. CONCLUSION

For the above stated reasons, the Sheriff's *Motion to Dismiss*[45] is GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 4, 2018.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[45] Rec. Doc. 17.
Document Number: 45937