**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| TAYARI ROSS and KAIASHA WHITE, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:17-cv-526 |
| v. | ) ) | **SECOND AMENDED COMPLAINT –** |
| CLEVE DUNN, Sr. and REHABILITATION HOME INCARCERATION, | ) ) ) | **CLASS ACTION** **JURY DEMAND** |
| Defendants. | ) ) ) ) | |

## I.      PRELIMINARY STATEMENT

1.      For years, Defendant Rehabilitation Home Incarceration ("RHI"), a private organization purporting to provide pretrial supervision services, profited off individuals in East Baton Rouge Parish by requiring them to pay hundreds of dollars to RHI to be released from jail—effectively holding them for ransom.  This fee was the creation of RHI alone—it was not ordered by any court.  Those who could not afford the fee languished in jail for days, weeks, or even months as they and their loved ones scrambled to pay off RHI.

2.      This scheme was arranged by Cleve Dunn, Sr. ("Dunn"), RHI's Chief Executive Officer, who directed RHI employees to withhold paperwork authorizing the release of individuals ordered to RHI supervision from the East Baton Rouge Parish Prison (the "Prison") until they paid the initial fee.

3.      The practice occurred with the knowledge of Trudy White, a criminal court judge of the Nineteenth Judicial District Court of Louisiana (the "JDC"), who set bond for arrestees and indiscriminately ordered them to undergo supervision by RHI—often for indefinite periods of time

1

before their cases went to trial and without assessing their inability to pay any RHI-related fees, including the initial fee that RHI required of supervisees to be released regardless of whether supervisees satisfied all other conditions for initial release.

4.    After arrestees paid RHI's initial fee and were released by the Prison, RHI continued to exact money from them, charging a $225 monthly fee and additional fees for requirements such as classes and ankle monitoring. RHI and Dunn wrongfully used the threat of arrest by East Baton Parish Rouge law enforcement or RHI officials, as well as the threat of bond revocation by the JDC and additional jailing at the Prison, to coerce payment.

5.    Plaintiffs Tayari Ross and Kaiasha White bring this class action pursuant to 42 U.S.C. § 1983, the Louisiana and federal Racketeering Influenced and Corrupt Organization Acts (RICO), and other state causes of action against Defendants Dunn and RHI. Defendant Dunn regularly committed predicate acts under RICO—extorting money from Plaintiffs and the proposed Class—by wrongfully detaining them in jail until they paid RHI's initial fee, then threatening them with additional jailing if they failed to satisfy RHI's continuing demands for money once released. Plaintiffs seek actual and treble damages to compensate them and the proposed Class for the injuries they have sustained because of Defendant Dunn's extortionate activities.

6.    Plaintiff White and the proposed Class also seek damages from RHI for its policy and practice of detaining Plaintiff White and proposed Class members in the Prison until they paid RHI's initial fee, and in the alternative, for its conspiracy with Judge White to do the same, in violation of the Fourteenth Amendment's guarantees of due process and equal protection. Plaintiff White and the proposed Class also seek damages from RHI for this detention policy and practice in violation of their Fourth Amendment right against unreasonable seizures.

7. Plaintiff White individually seeks damages from RHI under the Louisiana Unfair Trade Practices Act for RHI's harmful and oppressive commercial practices, and, on behalf of herself and the proposed Class, seeks damages from RHI for conversion and unjust enrichment under state law.

## II.     JURISDICTION AND VENUE

8. This is a civil class action arising under 42 U.S.C. § 1983, 18 U.S.C. § 1964, the United States Constitution, and Louisiana law.

9. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The Court has jurisdiction over Plaintiffs' claims under Louisiana law pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## III.     PARTIES

### A. Plaintiffs

11. Plaintiff Tayari Ross is a resident of East Baton Rouge Parish, Louisiana.

12. Plaintiff Kaiasha White is a resident of East Baton Rouge Parish, Louisiana.

### B. Defendants

13. Defendant Cleve Dunn, Sr. is the Executive Director of Rehabilitation Home Incarceration. He is a resident of East Baton Rouge Parish, Louisiana.

14. Defendant Rehabilitation Home Incarceration ("RHI") is a non-profit corporation registered with the State of Louisiana, with its principal place of business in East Baton Rouge Parish, Louisiana.

## IV.    FACTS

*General Facts*

### A.  The Nineteenth Judicial District Court

15.     The Nineteenth Judicial District Court (the "JDC") has original jurisdiction over all civil and criminal matters and original exclusive jurisdiction of state felony cases in East Baton Rouge Parish, Louisiana.  La. Const. art. V, § 16(A)(1)-(2).  Louisiana district court judges are elected and serve six-year terms.  There are eight criminal court judges who hear misdemeanor and felony cases in the JDC.

16.     The JDC and individual judges also make agreements with private companies to provide certain court services such as pre-trial supervision.

17.     Judge White has served on the JDC since 2009 and was re-elected to the JDC in 2014.  She presides over civil matters and state misdemeanor and felony cases assigned to Criminal Division J, Section 8, of the JDC.

### B.  RHI's Judicial and Political Ties to Judge White

18.     RHI served as one of the private companies that offer pretrial supervision services for the JDC.

19.     RHI, which was registered as a non-profit corporation in Louisiana,[1] supervised thousands of individuals in East Baton Rouge, Orleans, Ascension, and Tangipahoa parishes since its inception in 1993.

20.     RHI was owned and operated by the Dunn family, who live in Baton Rouge.  Cleve Dunn Sr., Evonne Dunn, and Tameka Dunn all serve as co-directors of RHI.

---

[1] *See* La. Sec'y of State, "Search for La. Business Filings," Rehabilitation Home Incarceration, https://coraweb.sos.la.gov/CommercialSearch/CommercialSearchDetails.aspx?CharterID=60196 2_DF50A07E17.

21. RHI was the only approved vendor for pre-trial supervision on Judge White's website.

22. RHI did not have a formal written contract with the JDC. Its provision of services to Judge White was based on an informal arrangement between RHI and Judge White.

23. Former RHI officials and Judge White are political allies. RHI officials and employees supported Judge White's 2014 re-election campaign.

24. Cleve Dunn, Jr. served as Chairperson of Judge White's Campaign Committee; White's campaign paid Cleve Dunn, Sr. for marketing; and RHI paid Frederick Hall, a former RHI employee, and his wife, Gloria Hall, who owns and operates the bond company to which RHI routinely referred putative supervisees, for campaign support activities.

**C. Defendants' Pretrial Supervision Scheme**

25. Individuals arrested for criminal offenses in East Baton Rouge Parish are initially taken to the East Baton Rouge Parish Prison (the "Prison"), which is staffed and operated by the East Baton Rouge Sheriff, Sid J. Gautreaux, III.

26. The following day, they appear via closed-circuit television between the Prison and the JDC for a hearing to determine probable cause for detention and to set bond. The eight criminal judges of the JDC take turns conducting this hearing, with each serving as the "duty judge" for a given week.

27. Usually before the hearing, the judge on duty has already reviewed the affidavit of probable cause and set a bond amount and release conditions for the defendant. At this hearing, the duty judge may adjust an arrestee's bond based on facts disclosed at the hearing.

28. When Judge White is on duty, she typically asks an arrestee about only his knowledge of the charges and informs him of the bond amount. She generally does not ask

questions beyond these topics.  Nor does she allow arrestees to be heard on issues beyond these topics.  Although a public defender may be present to note the cases appointed to the public defender office, no representation is provided at this initial hearing.

29.     Between Judge White's re-election to the JDC in 2014 and September 2017, Judge White regularly assigned hundreds of arrestees to supervision by RHI.  White did so without conducting in open court an individualized determination of, or providing an opportunity for arrestees to be heard on, the need for, or the conditions of, RHI supervision.  Indeed, White appeared to make assignments to RHI via the bond form before arrestees appeared before her, and she did not ask arrestees any questions before assigning them to RHI, such as whether an arrestee could afford to pay bond or RHI's initial or monthly fees.

30.     Rather than conduct these inquiries, Judge White signed an order making RHI supervision a condition of release on bond, without instruction about many of the terms of this supervision that RHI later imposed.  Plaintiff Ross's bond order, which includes the term of supervision by RHI while on bond, is reproduced here:

ST. JOHN THE BAPTIST PARISH
FILED JUN 16 20__
ORIGINAL
DEPUTY CLERK

To The Sheriff of the Parish of East Baton Rouge:

You are hereby authorized to release: *Tayari Ross*

accused of: *2nd off. DWI — $5,000.00*
*reckless operation — $1,000.00*
*Improper lane usage — $500.00*

*(See attached order if there are additional charges or orders)*

upon a good and solvent bond conditioned as the law directs in the total sum of *$6,500.00*
_____ Dollars and returnable to the
NINETEENTH JUDICIAL DISTRICT COURT in the Parish of East Baton Rouge.

**SPECIAL CONDITIONS --**
(Check All That Apply)

|   |   |
|---|---|
|   | Defendant may be signed out by _____ who shall act as his/her personal surety in the amount of $ _____ Dollars. |
| X | You shall be randomly tested for ingestion of controlled dangerous substances while on bond. Random drug tests may be administered upon request of bond supervisor, upon request from Judge in open court and/or as part of a random testing program administered by the Drug Lab for the 19th Judicial District Court. |
|   | You shall, the next business day after your release from parish prison, appear in the Drug Lab, Room 3501, 19th Judicial District Court, to be drug tested and to sign up for random drug testing for _____ days. (Phone: 225-389-2596) |
|   | You shall observe a daily curfew from _____ P.M. to _____ A.M. |
| X | You shall be under the supervision of *90 days RHI Cleve Dunn 364-7753* for a period of *90* days to ensure compliance with this order upon release on bond. |
| X | You shall not be released on bond without first meeting with your bond supervisor. |
|   | You shall have affixed to your ankle a functioning GPS device to ensure that you comply with the bond conditions set forth herein. This device shall be monitored by your bond supervisor. |
| X | You shall not operate a motor vehicle unless it is equipped with a functioning interlock device, and this device must be installed within fifteen (15) days from posting bail. |
|   | You shall not be released on bond until a protective order is in effect. |
|   | You shall not travel or reside outside the State of Louisiana without prior approval from the Court. |
|   | You shall not in any form or manner contact or communicate with the alleged victim in this case. |
|   | You shall be under house arrest and shall not leave your home for any reason except to attend court hearings and to: _____ |
|   | You shall not be released on bond prior to the Office of Probation and Parole being notified. (Phone - 225-922-0227) |
|   | Other _____ |
|   | Other _____ |
|   | Other _____ |

Probable cause determined and bond set on this *16th* day of *June* _____.
20 *16*.

_____ *Judge M. White*
JUDGE, NINETEENTH JUDICIAL DISTRICT COURT

*Tayari Ross* _____ *6-17-16*
Defendant's Signature / Date

31.    Judge White usually set the duration of RHI's supervision at either ninety days,

irrespective of the supervisee's next court date, or for an indefinite period of time.

32.     As shown in Ross's bond order, however, Judge White did not order payment of the initial fee or monthly fee as a condition of release from the Prison.  Instead, RHI set this payment as a condition of release.

33.     RHI demanded an initial fee of $525.

34.     Arrestees typically learned they had to pay this initial fee to be released only when they or their family members attempted to post bail or when they first met with RHI representatives at the Prison.

35.     RHI represented that the court had ordered this initial fee.

36.     The Prison typically released detainees ordered to RHI supervision only after it received confirmation from RHI—confirmation that RHI provided only after it received or made arrangements for the initial payment.

37.     Knowing there was no inquiry into supervisees' ability to pay and intending for there to be no such inquiry, RHI required supervisees to pay, or to promise to pay immediately after their release, the initial fee before approving the release of supervisees from the Prison, thus detaining supervisees who could not pay.  In the alternative, RHI conspired with Judge White to detain supervisees until they paid or promised to pay the initial fee with no inquiry into ability to pay and conditioned release upon payment.

38.     Arrestees who could not immediately pay the initial RHI fee waited in jail for days or weeks until they could pay all or some portion of the initial fee.  They were told that if they were released, they could be rearrested for failing to pay any outstanding amount of the initial fee.

39.     At the time of release, the arrestee's next court date typically had not been scheduled, and the arrestee had not been arraigned.  In some cases, the supervisee was not

arraigned during the RHI supervision term. Thus, supervision sometimes ended before the arrestee ever re-appeared before Judge White for his or her next hearing.

40. Upon release, RHI required the arrestee—now a "supervisee"—to sign a contract setting forth RHI's future fees and conditions of supervision. A copy of a redacted, standard contract is reproduced here:

### Contract

This Contract between Rehabilitation Incarceration referred to as RHI and ▇▇▇▇▇▇▇▇▇▇▇ referred to as client is effective as follows: This contract made and entered into this _7M_ day of _OCT_ 20_16_. This client agrees to be intensely monitored by RHI upon release by the Court, and further agrees to adhere to the monitoring procedures explained and listed below. The client agrees to comply with the following: _Sun - Thurs 10P - 6A        FRI - SAT 11P - 6A_

1. Curfew shall be from 9:00pm until 6:00am. On the days the client is not working, the client shall be confined to his/her residence unless an emergency occurs. The client shall inform the assigned monitor who will evaluate the emergency and make a decision.
2. The Client shall provide RHI with a work schedule weekly and immediately inform the assigned monitor of any changes.
3. The Client shall not consume any alcohol beverages and/or any illegal drugs during this monitored period; and will refrain from bad associates and stay away from any and all firearms and weapons.
4. The Client shall not leave the Parish of East Baton Rouge without permission from RHI and the court. _8A - 11A - 3P - 8P_
5. The client shall contact the monitor four different times during the day providing the monitor with all activities, when not working.
6. The Client agrees to be available for mental evaluation immediately upon release from jail; the evaluation must be done by a certified physician in the area. Please provide results to your Monitor.
7. All clients will be required to do a minimum of 50 hours of community service; and will have to take an Anger Management class.
8. The Client understands that any violation of this agreement shall be immediately reported to the courts, which may result in the client immediate arrest either by ▇▇▇▇ RHI official or East Baton Rouge City Police.

In condition of the provided services, the client agrees to pay RHI a registration fee of $225.00, plus a $300.00 investigation fee, which are both non-refundable. Payments shall be made in U.S. currency, money order or certified check. This payment is due upon the release of the client from incarceration. RHI monthly fee is $225.00 that's due at the first of every month. **THUS done and signed this** _7M_ **day of** _OCT_ **, 20**_16_ **AT BATON ROUGE, LOUISIANA.**

41.     According to the terms of RHI's standard contract, RHI supervisees had to pay a $225 monthly fee to their assigned RHI officer, or "Monitor," during their supervision term.

42.     The standard contract also set a curfew for supervisees, restricting supervisees from spending the night anywhere other than at their reported residential address.

43.     Despite collecting significant fees for its supervision, RHI did not require supervisees to make other substantive reports to their RHI Monitor other than their compliance with curfew.  Nor did it typically require supervisees to meet their Monitor in person except for purposes of paying their supervision fees.  Rather, supervisees had to only call their RHI Monitor by telephone multiple times a day and leave a voicemail message if the Monitor did not answer.

44.     At RHI's discretion, a Monitor could require a supervisee to wear an electronic monitoring device at all times for additional fees.

45.     Additionally, RHI could require supervisees to attend and pay additional fees for classes taught by RHI employees.  RHI also imposed a number of other conditions, including prohibiting supervisees from consuming any alcohol, restricting their movement to within East Baton Rouge Parish, requiring them to complete a "mental evaluation" through a certified physician, or mandating 50 hours of community service.

46.     RHI's standard contract with supervisees explicitly states that it will report any violation of these conditions to the JDC, which may result in the supervisee's arrest by "East Baton Rouge City Police" or by an RHI official.

47.     RHI Monitors and Dunn himself threatened supervisees with re-arrest if they failed to make financial payments or comply with RHI's costly supervision conditions—without affirmatively inquiring into their ability to pay.  Accordingly, supervisees paid (or attempted to

pay) the fee out of fear of re-arrest and bond revocation by scraping together money from friends or family.

48. The policies and practices of RHI, including the standard contract and the fees required, were implemented by Defendant Dunn and enforced by his employees at his direction.

49. In or around September 2017, Judge White instructed RHI to stop supervision of supervisees she had referred to RHI and informed RHI that she would no longer refer cases to RHI due to recent media scrutiny and this litigation.

**D. Plaintiffs' Experience with Defendants' Pretrial Scheme**

 **a. Plaintiff Tayari Ross**

50. Plaintiff Tayari Ross appeared before Judge White on June 16, 2016, via closed-circuit television from the Prison after his arrest on several traffic charges.

51. Judge White informed Mr. Ross of his charges and set his bond at $6,500. She did not tell him that he would have to pay fees to RHI or that he would be detained for failure to pay the initial fee to RHI.

52. Later that day, Mr. Ross called his mother, Betty Johnson, from jail to ask for her help in arranging for a bail bond to secure his release from the Prison. After their call, Ms. Johnson contacted a bail bondsman and paid him roughly $800 for the premium.

53. After the bail bondsman posted the bond at the Prison, Mr. Ross was called to central booking to be processed for release. He waited in central booking for several hours. When he asked Prison staff why he had not yet been released, he was told that a "hold" had been put on him. Mr. Ross then called his mother again and asked her to help get the "hold" lifted.

54. Ms. Johnson called the bail bondsman, who also did not know how to lift the "hold." After calling the Prison, the bail bondsman got back on the phone with Ms. Johnson and

told her that he spoke to Prison staff, who informed him that Mr. Ross would have to pay $525 for Mr. Ross to be released. The bondsman informed her that she could go to the Prison to speak to the people who had placed the "hold" on Mr. Ross.

55.     Ms. Johnson went to the front gate of the Prison. When she told Prison staff the reason she was there, a staff member went inside and sent out a man who identified himself as an RHI employee. The two of them spoke in the parking lot, where Ms. Johnson protested that her son should not be held in the Prison because his bond had already been posted. The man said that Judge White had ordered a $525 payment, even though Judge White's bond order did not impose a requirement to pay RHI. He also informed Ms. Johnson that Mr. Ross would be put on "probation," although Mr. Ross had not been found guilty of his charges.

56.     Ms. Johnson insisted that she did not have $525 to pay to RHI for Mr. Ross's release, and she continued to protest that Mr. Ross should not be held after the bond had been posted. During this time, Mr. Ross called her again, and she placed Mr. Ross on the phone with the RHI employee.

57.     Many hours after Mr. Ross had posted bond, the RHI employee agreed to lift the "hold" on Mr. Ross on the condition that he pay RHI $500 as soon as he was released. The RHI employee told Mr. Ross that he would have to meet with Frederick Hall, an RHI supervisor, immediately after his release. The RHI employee also warned Mr. Ross that if he did not immediately pay the $525 fee—which RHI represented to Mr. Ross as a court-ordered fee in some instances—he would be sent back to the Prison.

58.     Mr. Ross promised that he would pay as soon as he was released. The RHI employee went back inside the jail, and Mr. Ross was freed several hours later. Although his bond

order required him to meet with his bond supervisor prior to his release, no one from RHI met with Mr. Ross in the Prison.

59.     Upon his release, Mr. Ross went to his employer and asked for a cash advance. He then went to RHI's office that same morning, where he waited for over an hour and a half until Isabelle Robinson, an RHI employee, arrived. She explained that in addition to the initial fee and monthly fee, Mr. Ross would have to pay $60 for a class offered by RHI. Mr. Ross paid $585 to her. He then sat in a room with four or five other people who were also waiting to meet with Frederick Hall. While waiting, Mr. Ross watched as several of the other people in the room told Mr. Hall that they did not have the money to pay RHI's fees. Mr. Hall told each of them that they would go back to jail if they could not pay their fees, and he then directed them to Cleve Dunn's office. Mr. Ross believed that if he did not keep up with his payments he would be sent back to the Prison.

60.     Once enough people had arrived, Mr. Hall gave a presentation on the rules of RHI supervision. He stated that everyone would be required to adhere to a 10 p.m. curfew, and that some people would be required to wear ankle monitors and to have a Breathalyzer installed in their cars.

61.     However, RHI did not provide an ankle monitor to Mr. Ross.

62.     Mr. Ross called Mr. Hall each day when he got to work and when he returned home at night.

63.     Mr. Ross made regular payments on his monthly fee of $225, even though he was supporting his three daughters, two of whom lived with him, as well as repaying his employer for the cash advance he had taken out to pay RHI's initiation fee. He sometimes borrowed money from his mother to keep up with payments.

64.     Mr. Hall would often come to the restaurant where Mr. Ross worked as a manager to pick up his payments.  On one occasion, Mr. Hall accused Mr. Ross of underpaying on the monthly fee, even though both he and Mr. Ross had counted the money when Mr. Ross had made the payment.  Mr. Ross tried to protest that he did not owe RHI additional money, but ultimately he had to pay it out of fear of RHI sending him back to Prison.

65.     On August 31, 2016, Mr. Ross met with Ms. Robinson, an employee at RHI.  Like Mr. Hall, Ms. Robinson said that Mr. Ross had underpaid RHI and owed additional money.  Mr. Ross insisted that he had already paid that amount, and told her to call Mr. Hall to confirm.  To avoid being sent back to Prison, Mr. Ross paid Ms. Robinson $305 and was told to watch a video on "effective decision making."  After watching the video, he received a certificate of completion for RHI's 90-day monitoring program.

66.     Apart from the video on effective decision making and the phone calls he made to his monitor, Mr. Ross did not receive any supervision services from RHI.

**b. Plaintiff Kaiasha White**

67.     Plaintiff Kaisha White appeared before Judge White on August 8, 2016, after her arrest on charges of simple and aggravated battery concerning an argument with her partner.

68.     Judge White set her bond at $4,000 and informed her that she would also have to report to RHI.

69.     Judge White did not ask Ms. White any questions about herself, her charges, or her case; did not set any terms of the RHI supervision; and did not allow Ms. White to ask any questions about the supervision.  Judge White also did not inform Plaintiff White that she would be detained if she did not pay RHI the initial fee.

70. Ms. White did not have money to pay RHI, as she was unemployed at the time and relied on her partner and family members to pay her living expenses. Thus, she was detained in the Prison for another month until her mother received a social security check.

71. On or about September 1, 2016, Ms. White's mother gave a bail bondswoman $500. The bondswoman told Ms. White that the bondswoman and RHI would split the payment, and that a portion would go towards RHI's initial fee.

72. The next day, RHI employee Hall went to the Prison and met with Ms. White. He informed her that she would have to pay the remainder of the initial fee—which RHI had represented as a court-ordered fee—and monthly supervision fee after she was released. He then had her sign RHI's contract, which provided that Ms. White could be arrested by an RHI official or East Baton Rouge law enforcement if she violated its terms. Later that day, Ms. White was released from the Prison.

73. During Ms. White's detention in the Prison for her inability to pay RHI's initial fee, a severe flood hit Baton Rouge in mid-August, damaging her home and her and her son's belongings. Because she was being held in the Prison, she could not check on her home or attempt to salvage her possessions for several weeks.

74. Following Ms. White's release from the Prison, Ms. White's mother paid an additional $250 towards the initial fee. Ms. White later met with Frederick Hall at her house. Mr. Hall told her that she would have to wear an ankle monitor and that he would call her each night to make sure she obeyed curfew.

75. In the following months, Ms. White called Mr. Hall on occasion to let him know she was trying to save up money to pay her monthly fee. She repeatedly asked him how long she would be on RHI supervision, but he did not give her a definite time; her bond order also did not

indicate how many days she would be on supervision. Mr. Hall also did not provide Ms. White with an ankle monitor.

76.     As time passed and Ms. White still was not able to pay RHI's monthly fees, Mr. Hall accused her of falsely claiming that she was trying to pay. Ms. White became afraid that RHI would have her arrested.

77.     During this time, Ms. White lacked a stable place to live and had to stay with family and friends because her home was still flood damaged.

78.     On or about late December 2016 or early January 2017, Ms. White told Mr. Hall that she could pay RHI $300.

79.     Because Ms. White was worried that if she saw Mr. Hall in person, he would have her arrested, she had her son meet Mr. Hall to deliver the payment.

80.     Sometime after she made this payment, another RHI representative called Ms. White to inform her she had failed to pay for and attend a $55-per-month class. However, Mr. Hall had not told Ms. White that she was required to attend this class. The RHI representative told her that if she did not comply, RHI would have her arrested during the next police "round up."

81.     Ms. White called Mr. Hall to ask why she was being required to take and pay for the class, but no one answered at his phone number. She subsequently received a letter from RHI stating that Mr. Hall had left RHI.

82.     Ms. White did not hear from Mr. Hall again. However, she began receiving letters from RHI claiming that she owed roughly $800. Ms. White lacked the money to pay this amount. She still does not know for how long she was under RHI supervision.

83. Plaintiff Ross is a "person" entitled to bring a private cause of action under 18 U.S.C. § 1964(c) and La. Stat. Ann. § 15:1356(E).

84. Plaintiff White is a "person" entitled to bring a private cause of action under 18 U.S.C. § 1964(c) and La. Stat. Ann. § 15:1356(E).

85. RHI was a corporate enterprise that regularly engaged in interstate commerce. RHI's engagement in interstate commerce included, but was not limited to, using telecommunications and electronic monitoring technology to track supervisees across state lines, purchasing and employing electronic monitoring devices that are produced and sold outside the state of Louisiana, accepting payment of fees by credit card, and maintaining a website available to users in interstate commerce.

86. Defendant Dunn is an individual and thus a "person" within the meaning of 18 U.S.C. § 1961(3).

87. Defendant Dunn conducted the affairs of RHI through a pattern of racketeering to achieve the common purpose of unlawfully extorting money from Plaintiffs Ross and White and the proposed Class. These racketeering acts were an integral part of RHI's regular course of business.

88. As described above, on numerous occasions over an unknown period of time Defendant Dunn committed related, predicate acts of extortion by threatening to keep, and arranging with the Prison to keep Plaintiffs and the proposed Class in jail until they have paid RHI's required initial fee, and instructing his employees to do the same. Thereafter, Defendant Dunn, directly and through the actions of his Monitors and other employees, continued this

unlawful use of fear to threaten Plaintiffs and the proposed Class with further jail time or court sanctions if they failed to pay RHI's monthly and programmatic fees.

89. Pursuant to and in furtherance of this unlawful scheme, Defendant Dunn committed multiple, related predicate acts of extortion by refusing to authorize the release of Plaintiffs and the proposed Class from the Prison until they paid money towards the RHI initiation fee. Additionally, by unlawfully using the fear of arrest and jail by East Baton Rouge law enforcement or RHI officials, Dunn on numerous occasions extorted from Plaintiffs and the proposed Class a monthly supervision fee, along with fees for classes or other requirements imposed at the discretion of RHI employees.

90. Defendant Dunn's use of RHI to extort money from arrestees assigned by Judge White constituted a pattern of racketeering activity.

91. These actions were a regular way of conducting the ongoing business of RHI.

92. As a direct and proximate result of Defendant Dunn's racketeering activities, Plaintiffs and the proposed Class have been injured in their property in that they paid RHI's fees due to the fear induced by Dunn and RHI employees' wrongful use and threats of arrest and jailing.

## V. CLASS ACTION ALLEGATIONS

93. Plaintiffs Ross and White propose a class seeking damages as to the First, Second, Third, Fourth, Sixth, and Seventh Claims for Relief, pursuant to Fed. R. Civ. P. 23(a) and (b)(3). The Class is defined as: All individuals whom Judge White ordered to pretrial supervision by Defendant RHI who were subsequently supervised by RHI.

94. A class action is a superior means, and the only practicable means, by which the named Plaintiffs and putative Class members can challenge Defendants' extortionate racketeering

scheme and unlawful use and threat of wealth-based detention to extort fees from Plaintiffs and the Class.

95.     Class-action status under Rule 23(b)(3) is appropriate because questions of law or fact common to proposed Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

96.     Furthermore, as detailed below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

**A.  Requirements of Rule 23(a)**

*Rule 23(a)(1) - Impracticability of Joinder Due to Numerosity*

97.     The precise size of the proposed Class is unknown by Plaintiffs, but it is substantial given the number of arrestees Judge White has assigned to RHI supervision in recent years.

98.     Court records indicate that over three hundred people were ordered to RHI supervision by Judge White in 2015 and 2016.

99.     Many of the proposed Class members are low-income individuals who will be difficult to identify and likely lack financial resources to bring an independent action or to be joined in this action.  Joinder of every member of the proposed Class would be impracticable.

*Rule 23(a)(2) - Commonality*

100.    The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the proposed Class.  The named Plaintiffs seek monetary relief from Defendants' extortionate and unconstitutional pretrial supervision practices, which violate the state and federally-protected rights of the Class members.

101.    Among the most important common questions of fact for the proposed Class are:

a. Whether RHI, independent of Judge White, set terms for an arrestee's release and the fees for its supervision services;

b. Whether RHI and Judge White had an agreement to act in concert to incarcerate Plaintiff White and putative Class members without any determination of their ability to pay before being incarcerated for non-payment of the initial fee while under RHI pre-trial supervision;

c. Whether Defendants refused to authorize release from the Prison of individuals referred to RHI by Judge White until individuals paid, or promised to pay, RHI's initial fee to Defendants' satisfaction;

d. Whether RHI enforced this agreement against the proposed Class without determining whether proposed Class members could afford to pay RHI's initial fee;

e. Whether RHI's standard contract provided for an initial fee and monthly fees;

f. Whether RHI's standard contract provided for arrest and jailing for failure to pay its fees; and

g. Whether Dunn directed RHI employees to threaten to arrest and jail Proposed Class members who did not pay the monthly supervisory fees and other mandated fees to RHI.

102. Among the most important common questions of law for the proposed Class are:

a. Whether Defendant Dunn's operation of RHI through a pattern of racketeering activity, specifically, extorting money from Plaintiffs and the Proposed Class by unlawfully detaining them in the Prison until they pay RHI's initial fee, then threatening them with additional jailing if they failed to pay RHI monthly fees once released, violated the Louisiana and federal RICO Acts;

b.  Whether RHI's practice of denying authorization to release Plaintiff White and members of the proposed Class from the Prison because they could not pay RHI's initial fee violated Plaintiff White and proposed Class members' rights under the Fourteenth Amendment to due process and equal protection;

c.  Whether Judge White and RHI conspired to violate Plaintiff White and proposed Class members' rights under the Fourteenth Amendment to due process and equal protection;

d.  Whether RHI's practice of denying authorization to release Plaintiff White and the proposed Class members after they posted bonds constituted an unreasonable seizure in violation of the Fourth Amendment; and

e.  Whether RHI lacked any legal authority or right to collect fees from Plaintiff White and the proposed Class members.

***Rule 23(a)(3) - Typicality***

103.    The named Plaintiffs' claims are typical of the claims of the other members of the proposed Class, and they have the same interests in this case as all other proposed Class members that they represent.  Each of them suffered injuries from Defendants' failure to comply with state and federal law: they were each confined in jail for nonpayment of RHI's initial fee, without inquiry into their ability to pay, and then threatened with additional jailing if they did not pay RHI's subsequent fees and costs.  The answer to whether Defendants' scheme is unlawful will determine the claims of the named Plaintiff and every other proposed Class member.

104.    If the named Plaintiffs succeed in the claim that Defendants' policies and practices violate their federal and state rights, that ruling will likewise benefit every other member of the proposed Class.

*Rule 23(a)(4) - Adequacy*

105.    Plaintiffs will fairly and adequately represent the interests of the proposed Class they seek to represent.

106.    Plaintiffs have no interests separate from, or in conflict with, those of the proposed Class they seek to represent as a whole, and they seek damages, which Plaintiffs pursue on behalf of the entire proposed Class that they seek to represent.

**B.  The Requirements of Rule 23(b)(3)**

107.    Class certification of the proposed Class is appropriate because common questions of law and fact, including those listed above, predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

108.    The proposed Class seeks damages against Defendants Dunn and RHI for jailing the proposed Class until its members were able to pay RHI's initial fee and for engaging in a pretrial supervision scheme that allowed RHI, under Dunn's direction, to extort additional fees and costs from the proposed Class by wrongfully threatening future jail time and court sanctions for nonpayment.

**C.  The Requirements of Rule 23(g)**

109.    Plaintiffs are represented by attorneys from the American Civil Liberties Union, the American Civil Liberties Union Foundation of Louisiana, and the Southern Poverty Law Center who have experience litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' practices and the relevant constitutional and statutory law.  Counsel has the resources, expertise, and experience to prosecute this action.

## VI.    CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Federal Racketeering Influenced and Corrupt Organization Act

### (18 U.S.C. § 1962(c))

*Plaintiffs Ross and White and the Proposed Class against Cleve Dunn, Sr.*

110.    Plaintiffs incorporate and adopt Paragraphs 1 through 109 of this Second Amended Complaint.

111.    Rehabilitation Home Incarceration ("RHI") is an enterprise engaged in and whose activities affect interstate commerce.  Defendant Cleve Dunn, Sr. is RHI's Executive Director.

112.    In violation of 18 U.S.C. § 1962(c), Defendant Dunn conducted RHI's affairs through a pattern of racketeering activity to illegally extort money from Plaintiffs Ross and White and proposed Class Members.  Specifically, Dunn made an agreement with Judge Trudy White for RHI to be Judge White's approved vendor for pretrial court supervision.  Dunn then imposed conditions of supervision for arrestees assigned to RHI, including imposing fees for release and monthly supervision, and used threats of incarceration for supervisees who did not comply with RHI's conditions or pay the required fees.

113.    Dunn made a separate agreement with Prison officials that prohibited the release of pretrial arrestees assigned to RHI unless the arrestees paid RHI's initial fee and RHI sent confirmation to the Prison that the arrestee had paid said fee.

114.    Pursuant to and in furtherance of this unlawful scheme, Defendant Dunn committed multiple, related predicate acts of extortion by refusing to authorize the release of Plaintiffs Ross and White and the proposed Class from the East Baton Rouge Parish Prison until they paid the initial fee to RHI.  By unlawfully using the fear of arrest by East Baton Rouge law enforcement or

RHI officials to coerce payment, Dunn additionally extorted from Plaintiffs Ross and White and the proposed Class on numerous occasions a monthly monitoring fee of $225, along with other fees for classes required at the discretion of RHI employees.

115.     Defendant Dunn's use of RHI to extort money from arrestees assigned by Judge White constituted a pattern of racketeering activity.

116.     As a direct and proximate result of Defendant Dunn's racketeering activities and his violations of 18 U.S.C. § 1962(c), Plaintiffs Ross and White and the proposed Class were injured in their property because they paid RHI's fees from the fear induced by Dunn and RHI's wrongful threats of arrest and jailing.

## SECOND CLAIM FOR RELIEF

**Louisiana Racketeering Influence and Corrupt Organization Act**

**(LA. STAT. ANN. § 15:1353(C))**

*Plaintiffs Ross and White and the Proposed Class against Cleve Dunn, Sr.*

117.     Plaintiffs incorporate and adopt herein Paragraphs 1 through 109 of this Second Amended Complaint.

118.     RHI was an enterprise that conducted business in the state of Louisiana.  Defendant Cleve Dunn, Sr. was RHI's Executive Director.

119.     In violation of LA. STAT. ANN. § 15:1353(C), Defendant Dunn conducted RHI's affairs through a pattern of racketeering activity to illegally extort money from Plaintiffs Ross and White and proposed Class Members.  Specifically, Dunn made an agreement with Judge Trudy White for RHI to be White's approved vendor for pretrial court supervision.  Dunn then imposed conditions of supervision for arrestees assigned to RHI, including imposing fees for release and

monthly supervision, and used threats of incarceration for supervisees who did not comply with RHI's conditions or pay the required fees.

120.     Dunn made a separate agreement with Prison officials that prohibited the release of pretrial arrestees assigned to RHI unless the arrestees paid or promised to pay RHI's initial fee and RHI sent confirmation to the Prison that the arrestee had paid said fee.

121.     Pursuant to and in furtherance of this unlawful scheme, Defendant Dunn committed multiple, related predicate acts of extortion by refusing to authorize the release of Plaintiffs Ross and White and the proposed Class from the East Baton Rouge Parish Prison until they secured and paid or promised to pay the initial fee to RHI.  By unlawfully using the fear of arrest by East Baton Rouge law enforcement or RHI officials to coerce payment, Dunn additionally extorted from Plaintiffs Ross and White and the proposed Class on numerous occasions a monthly monitoring fee of $225 on behalf of RHI, along with other fees for classes or other services required at the discretion of RHI employees.

122.     Defendant Dunn's use of RHI to extort money from arrestees assigned by Judge White constituted a pattern of racketeering activity under Louisiana law.

123.     As a direct and proximate result of Defendant Dunn's racketeering activities and violations of LA. STAT. ANN. § 15:1353(C), Plaintiffs Ross and White and the proposed Class were injured in their property in that they paid RHI's fees from the fear induced by Dunn and RHI's wrongful threats of arrest and jailing.

## THIRD CLAIM FOR RELIEF

**Fourteenth Amendment to the Federal Constitution and Conspiracy to Violate the
Fourteenth Amendment
(Due Process and Equal Protection)**

*Plaintiff White and the proposed Class against RHI*

124.   Plaintiffs incorporate and adopt herein Paragraphs 1 through 82 and 93 through 109 of this Second Amended Complaint.

125.   The Fourteenth Amendment's guarantees of due process and equal protection prohibit jailing a person solely because of her inability to access money and make a monetary payment.

126.   Plaintiff White and the proposed Class have a fundamental interest in pretrial liberty under state and federal law.

127.   Defendant RHI violated Plaintiff White and the proposed Class's rights under the Fourteenth Amendment by detaining arrestees until they could pay RHI's initial fee and be released from the Prison, without an affirmative inquiry into or findings concerning ability to pay, and without consideration of and findings concerning alternative conditions of release.

128.   In the alternative, RHI had an agreement with Judge White to act in concert, and thus conspired with Judge White, to incarcerate Plaintiff White and other RHI supervisees to deprive them of their right to an ability-to-pay determination before being incarcerated for non-payment of the initial fee—which RHI represented to supervisees as court-ordered—while under RHI pre-trial supervision.  Judge White referred individuals to RHI for pretrial supervision with knowledge that once she referred them to RHI, RHI arranged to detain individuals at the Prison until supervisees paid the initial fee.

129.     RHI deprived Plaintiff White and the proposed Class of their rights under the Fourteenth Amendment through its policies and practices and/or through the conspiracy with Judge White.

## FOURTH CLAIM FOR RELIEF

### Fourth Amendment to the Federal Constitution

*Plaintiff White and the proposed Class against RHI*

130.     Plaintiffs incorporate and adopt herein Paragraphs 1 through 82 and 93 through 109 of this Second Amended Complaint.

131.     The Fourth Amendment prohibits unreasonable searches and seizures—including the detention of individuals beyond expiration of a valid order of confinement, without probable cause.

132.     Defendant RHI's practice of refusing to authorize the release of Plaintiff White and the proposed Class members from the Prison until they paid or promised to pay the initial RHI fee, without probable cause, and thus beyond the time Plaintiff White and the proposed Class members should have obtained pretrial release after posting bond, violated Plaintiff White and proposed Class members' Fourth Amendment rights.

## FIFTH CLAIM FOR RELIEF

### Louisiana Unfair Trade Practices Act

### (La. Stat. Ann. § 51:1405)

*Plaintiff White against RHI*

133.     Plaintiffs incorporate and adopt herein Paragraphs 1 through 49 and 67 through 82 of this Second Amended Complaint.

134. The Louisiana Unfair Trade Practices Act ("LUTPA") bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," La. Stat. Ann. § 51:1405, and authorizes recovery for any person who suffers an "ascertainable loss" as a result of this misconduct, whether of money or property, La. Stat. Ann. § 51:1409(A).

135. Defendant RHI violated LUTPA by entering an agreement whereby Judge White assigned pretrial arrestees to RHI without a meaningful hearing as to whether RHI supervision was appropriate, and without allowing any other pretrial supervision agency to provide whatever supervisory conditions may have been appropriate.

136. Defendant RHI further violated LUTPA by imposing conditions of release and determining its supervision fees without any lawful authority, thereby allowing RHI to charge supervisees exorbitant rates without any market competition. RHI then collected these fees by jailing or threatening to jail those under its supervision.

137. RHI's practices offend public policy and are unethical, oppressive, unscrupulous, and substantially injurious. They directly and proximately caused Plaintiff White significant losses in both her money and property.

## SIXTH CLAIM FOR RELIEF

### Conversion

*Plaintiff White and the proposed Class against RHI*

138. Plaintiffs incorporate and adopt herein Paragraphs 1 through 49 and 67 through 82 of this Second Amended Complaint.

139. Louisiana law protects against the intentional wrongful exercise or assumption of authority over another's goods, depriving her of permanent or indefinite possession.

140.    Through the scheme described above, RHI engaged in the tort of conversion by charging and collecting fees that are not authorized by statute or by order of the JDC.

141.    RHI also prevented Plaintiff White and proposed Class members' release from jail until arrestees paid the initial fee, and RHI used the threat of future jailing to coerce payment of further fees.

142.    Thus, Plaintiff White and proposed Class members were forced to agree to pay, and did pay, these fees under threats of arrest, jail, bond revocation, and duress.

143.    As a result, RHI lacked any legal authority or right to collect and retain Plaintiff White's and the proposed Class members' initial and monthly fees.  RHI thus intentionally and wrongfully deprived Plaintiff White and proposed Class members of their monetary property.

144.    RHI's practices directly harmed Plaintiff White and proposed Class members in their loss of property.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**Unjust Enrichment**

*Plaintiff White and the proposed Class against RHI*

145.    Plaintiffs incorporate and adopt herein Paragraphs 1 through 49 and 67 through 83 of this Second Amended Complaint.

146.    Article 2298 of the Louisiana Civil Code provides that "[a] person who has been enriched at the expense of another is bound to compensate that person."

147.    Through the scheme described above, RHI unjustly enriched itself at Plaintiff White's and proposed Class members' expense by requiring exorbitant and unnecessary fees that were collected under threat and that are not authorized by law.

## VII. REQUESTED RELIEF

WHEREFORE, Plaintiffs request the following relief:

a) That the Court assume jurisdiction over this action;

b) Certification of the Class under Fed. R. Civ. P. 23(a) and (b)(3);

c) Award treble damages to Plaintiffs Ross and White and Class members and against Defendant Dunn for his violations of the federal Racketeering Influenced and Corrupt Organization statutes (Count I);

d) Award the greater of treble damages or $10,000 to Plaintiffs Ross and White and Class members and against Defendant Dunn for his violations of the Louisiana Racketeering Influenced and Corrupt Organization statutes (Count II);

e) Award damages to Plaintiff White and Class members and against Defendant RHI for its actions, and conspiracy with Judge White, to jail Plaintiff White and putative Class members because of their nonpayment of RHI's initial fee, without properly considering Plaintiff White's ability to pay, in violation of Plaintiff White's and Class members' Fourteenth Amendment right to Equal Protection and Due Process (Count III);

f) Award damages to Plaintiff White and Class members and against RHI for its jailing of Plaintiff White and Class members for unlawfully prolonging Plaintiff White's and putative Class members' detention at the Prison after they had posted bond, in violation of Plaintiff White's and class members' right to be free from unreasonable seizures under the Fourth Amendment (Count IV);

g) Award damages to Plaintiff White and against Defendant RHI for RHI's violations of the LUTPA (Count V);

h) Award damages to Plaintiff White and proposed Class members and against Defendant RHI for RHI's conversion and unjust enrichment (Counts VI and VII);

i) Award prevailing party costs, including attorney fees; and

j) Grant other relief as the Court deems just and appropriate.

DATED this __ day of February, 2019.        Respectfully submitted,

_____

Ivy Wang
*On Behalf of Plaintiffs' Counsel*

Ivy Wang, La. Bar No. 35368
SOUTHERN POVERTY LAW CENTER
201 St. Charles Ave, Suite 2000
New Orleans, LA 70170
P: 504-486-8982
F: 504-486-8947
E: ivy.wang@splcenter.org

Emily Early, ASB-8536B18H*
SOUTHERN POVERTY LAW CENTER
150 East Ponce de Leon Ave., Suite 340
Decatur, GA 30037
P: 404-221-4036
F: 404-221-5857
E: emily.early@splcenter.org

Sara Zampierin, ASB-1695-S34H*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
P: 334-956-8200
F: 334-956-8481
E: emily.early@splcenter.org
E: sara.zampierin@splcenter.org

_____

Bruce Hamilton
*On Behalf of Plaintiffs' Counsel*

Bruce Hamilton, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157

New Orleans, LA 70156
P: 504-522-0628
F: 504-613-6511
E: bhamilton@laaclu.org

Brandon Buskey, ASB-2753-A50B*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
P: 212- 549-7364
F: 212-549-2654
E: bbuskey@aclu.org

*Admitted pro hac vice*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served via the Court's

CM/ECF system on counsel of record for Defendants.

Dated: February ___, 2019.

_____

Ivy Wang
*On Behalf of Plaintiffs' Counsel*