UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TAYARI ROSS, AND KAIASHA WHITE | * | CIVIL ACTION NO.: 3:17-cv-526 |
| ON BEHALF OF THEMSELVES AND | * | |
| ALL OTHERS SIMILARLY SITUATED | * | JUDGE: |
| | * | SHELLY D. DICK |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE: |
| CLEVE DUNN, SR., ET AL | * | ERIN WILDER-DOOMES |

*************************************************************************

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

*************************************************************************

**MAY IT PLEASE THE COURT:**

Defendants, **CLEVE DUNN, SR., INDIVIDUALLY (Hereafter referred to as "DUNN") AND REHABILITATION HOME INCARCERATION, (Hereafter referred to as "RHI"),** move this Honorable Court to dismiss Plaintiffs' claims against them with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted as set forth herein.

Both **DUNN** and **RHI** reserve their rights to oppose the class certification should this Court denies their motion to dismiss.

### I.     PRELIMINARY STATEMENT

Plaintiffs' Complaint started with multiple defendants in this matter that includes Sid J. Gautreaux, Sheriff, East Baton Rouge Parish who filed a motion to dismiss and which the Court granted. **DUNN** and **RHI** have similar facts also attributed to the Sheriff, Sid Gautreaux who was dismissed from this matter.

Initial plaintiffs, Henry Ayo and Kaiasha White, on behalf of themselves and others similarly situated, filed a Complaint and an Amended Complaint pursuant to 42 U.S.C. § 1983, the Louisiana and Federal Racketeering Influenced Corrupt Organization Acts, and other state causes of action, naming as defendants **Cleve Dunn, Sr., Rehabilitation Home Incarceration ("RHI"),** and Sid J. Gautreaux, in

his official capacity as Sheriff of East Baton Rouge Parish. (Rec. Doc. 2, ¶¶ 5, 13-15). Second Amended Complaint mirrored their previous complaints with minor factual changes. Thereafter, on June 12, 2019, Plaintiffs filed their Second Amended Complaint which removed Sheriff Gautreaux, III as a defendant and added another plaintiff to replace Henry Ayo who dismissed all of his claims. (Rec. Doc. 100). It still alleged that Judge Trudy White, a criminal judge of the Nineteenth Judicial District Court of Louisiana sets bonds for arrestees and indiscriminately orders them to undergo supervision by **RHI**, a private organization "purporting" to provide pretrial supervision services, as a condition of release on bond. (Rec. Doc. 100, ¶¶ 27, 28, 29). Plaintiffs claim that after arrestees pay **RHI's** initial fee and are released by the East Baton Rouge Parish Prison, **RHI** continues to exact money from them, charging $225 monthly fee and additional fees for requirements such as classes and ankle monitors, and **RHI** and **DUNN** allegedly used the threat of arrest by East Baton Rouge Parish law enforcement of **RHI** officials or the threat of bond revocation and additional jailing to coerce payment. (Rec. Doc. 100, ¶ 46).

Plaintiff Ross alleges that on July 16, 2016 Judge White set his bond conditions at the sum of $6,500 and under the supervision of **RHI** – **Cleve Dunn** for a period of 90 days, without informing him concerning the payment of fees to **RHI**. (Rec. Doc 100, ¶¶ 51). Plaintiff Ross claims an **RHI** employee came to the prison with documents for him to sign and informed him that he would have to pay his supervision fee but was released on promise that he would pay the fee and later told that he, Ross would have a curfew, and would have to pay a monthly fee to **RHI**. (Rec. Doc. 100, ¶¶ 57, 58). Plaintiff Ross claims that he stayed in jail for several hours because he and his mother could not afford the amount to pay **RHI**. (Rec. Doc. 100, ¶¶ 53, 56). Plaintiff Ross asserts that his mother posted his bond and tried to talk to **RHI** and the Sheriff as to why he has a "hold" on him. (Rec. Doc. 100, ¶ 53). Plaintiff asserts that **RHI** informed Ms. Jackson (Ross' mom) that she had to pay approximately $525 to **RHI** for Mr. Ross to be released from the prison and would have to continue paying each month. (Rec. Doc. 100, ¶

55).

Plaintiff claims that after Ross promised to pay an agreed upon sum, an employee, (whose identity was never disclosed) of **RHI** then notified prison officials that they could release Ross, and the prison released him. (Rec. Doc. 100, ¶ 58).

Plaintiff White alleges that she appeared before Judge White on August 8, 2016, and Judge White set her bond at $4,000 and informed her that she would have to report to **RHI**. (Rec. Doc. 100, ¶¶ 67-68). Plaintiff White asserts that she was unemployed at the time and was detained until her mother received a social security check. (Rec. Doc. 100, ¶¶ 69-70). Plaintiff White claims that her mother gave a bail bondswoman $500 on September 1, 2016, and the bondswoman told her that she and **RHI** would split the payment with a portion of the $500 going towards **RHI's** initial fee. (Rec. Doc. 100, ¶ 71). Plaintiff White claims that an **RHI** employee went to the prison and informed Plaintiff White that she would have to pay the remainder of the initial fee and monthly supervision fee after she was released, and after she signed the **RHI** contract, she was released from the prison later that day. (Rec. Doc. 100, ¶ 72). *Emphasis added.*

Plaintiff White further admitted that as time passed and she was still not able to pay **RHI's** monthly fees, she was never arrested by anyone even though she was afraid. During that time, Ms. White was never provided no ankle monitor either. (Rec. Doc. 100, ¶¶ 75, 76).

Plaintiffs further contend that **RHI**, as a result of an agreement with Judge White, conspired with Judge White in jailing Plaintiffs and members of the Proposed Class until they could pay **RHI** the initial fee, without an affirmative inquiry into or findings concerning ability to pay, and without considering of and findings concerning alternative conditions of release, violated Plaintiffs' and the Proposed Class's fundamental rights under the Fourteenth Amendment by detaining arrestees until they could pay the initial **RHI** fee and be released from the Prison. (Rec. Doc. 100, ¶¶ 127, 128, 129). Plaintiffs further

contend that **RHI's** practice of continue to detain Plaintiffs and the Proposed Class members until they paid the **RHI** fee, without probable cause, and thus beyond the time Plaintiffs and the Proposed Class members should have obtained pretrial release after posting bond, violated Plaintiffs and Proposed Class members' Fourth Amendment rights. (Rec. Doc. 100, ¶¶ 128, 132).

## II.     LAW AND ARGUMENT

### A. Applicable Legal Standard

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." **National Bi-Weekly Admin. Inc. v. Belo Corp., 512 F. 3d 137, 140 (5th Cir. 2007)** "A legally sufficient complaint does not need to contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action." **Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)** In order to avoid dismissal, for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. **Kaiser Aluminum & Chemical Sales v. Avondale Shipyards, 667 F. 2d 1045 (5th Cir. 1982)**

A complaint fails to state a claim on which relief may be granted when the plaintiff does not plead enough facts to state a claim to relief that is plausible on its face.  The United States Supreme Court explained as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted <u>unlawfully</u>.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and entitlement to relief. **Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L. Ed.2d 868 (2009)** *(Emphasis Mine)*

## III.     JUDICIAL IMMUNITY

## A. STANDARD FOR JUDICIAL IMMUNITY

The Supreme Court embedded judicial immunity into our jurisprudence, more than a century ago. **Sparks v. Duval County Ranch Co. Inc., 588 F.2d 124 (5th Cir. 1979).** The Court stated that it is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself". Therefore, the Court held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corrupt". **Bradley v. Fisher, 1872, 80 U.S. (13 Wall) 335, 347, 20 L.Ed. 646.** The Court drew a distinction between acts in excess of jurisdiction, which are protected by immunity, and acts in the clear absence of all jurisdiction, which are unprotected. The Court illustrated this distinction by stating that a probate judge with jurisdiction over only wills and the settlement of estates who tried a criminal case would be acting in clear absence of all jurisdiction, while a criminal court judge who convicted a defendant of a nonexistent crime would merely be acting in excess of jurisdiction. *Id* at 351-52. This immunity applies even when the judge is accused of acting maliciously and corruptly. **Sparks, supra**

Judicial immunity is a form of legal immunity which protects judges and others employed by the judiciary from liability resulting from their judicial actions. **Shaman, Jeffrey (January 1990) "Judicial Immunity from Civil and Criminal Liability." San Diego La Review 27.1.** This doctrine was associated with the English common law idea that "the King can do no wrong". **Floyd & Barker 12 Co. Rep. 23, 25, 77 Eng. Rep. 1305, 1307 (Star Chamber 1607).** Such concept has found home in the United States where judicial immunity is one of assorted forms of absolute immunity, prosecutorial immunity, legislative immunity and witness immunity. Judicial Immunity has also been described by the U.S. Supreme Court as providing "the maximum ability [of judges] to deal fearlessly and

impartially with the public. **Barr v. Matteo,** 360 U.S. 564 (1959)

The "cluster" of absolute immunities that protect participants in judicial and other adjudicatory proceedings exist to help guarantee an independent, disinterested decision-making process. These absolute immunities prevent the harassment and intimidation that could otherwise result if disgruntled litigants-particularly criminal defendants and inmates, both of whom have their liberty at stake-could vent their anger by suing either the person who presented the decision maker with adverse information or the person or persons who rendered an adverse decision. **Butz v. Economou,** 438 U.S. 478, 98 S.Ct 2894, 2912, 571. Ed2d 895 (1978). When determining the scope of judicial immunity, the requirements of judicial acts and jurisdiction are to be broadly construed to effectuate these policies. **Holloway v. Walker,** 765 F.2d 517 at 523-24 (5th Cir. 1985). A similar approach, of course, should be taken when determining whether an act by a prosecutor, juror, grand juror, or witness is integral to the judicial process and therefore protected by absolute immunity. *Id.*

Judicial immunity is a form of legal immunity which protects judges and others employed by the judiciary form liability resulting from their judicial actions. Judges are immune from damage claims arising out of acts performed in the exercise of their judicial functions, even when the judge is accused of acting maliciously. **McAlister v. Brown,** 469 F.2d 1280, 128 (5th Cir. 1972); **Stump v. Sparksman,** 435 U.S. 349, 359, 98.5. Ct. 1099, 55 L. Ed.2d 331 (1978). Obviously, Judge Trudy White was acting within her judicial capacity in assigning a plaintiffs' bond supervision to **RHI**. Plaintiffs have not argued otherwise.

Plaintiffs' allegations that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity. **Holloway v. Walker,** 765 F.2d 519, 522 (5th Cir.) cert. denied, 4774, U.S. 1037, 106 S.Ct. 605, 88 L. Ed.2d 583 (1985); **Adam v. McIlhaney,** 764 F.2d 294, 298 (5th Cir.) cert. denied, 474 U.S. 1101, 106 S.Ct 883, 88 L. Ed.2d 918

**(1986).** The judge is absolutely immune for all judicial acts "not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive." **Johnson v. Keegan, 870 F.2d 992, 995 (5th Cir.) cert denied, 492 U.S. 921, 109 S.Ct. 3250, 106 L. Ed.2d 592 (1989).**

The "cluster" of absolute immunities that protect participants in judicial and other adjudicatory proceedings exists to help guarantee an independent, disinterested decision-making process. These absolute immunities prevent the harassment and intimidation that could otherwise result if disgruntled litigants – particularly criminal defendants and inmates, both of whom have their liberty at stake – could vent their anger (such as in this matter) by suing either the person who presented the decision maker with adverse information or the person or persons who rendered an adverse decision. **See Butz, 98 S.Ct. at 2913; Holloway, 765 F.2d at 522.**

When determining the scope of judicial immunity, the requirements of judicial acts and jurisdiction are to be broadly construed to effectuate these policies. **Johnson, 870 F.2d at 897.**

Jurisprudence asserts that similar approach should be taken when considering "judicial adjuncts" who work with the decision maker; i.e., law clerks, etc. **See Mitchell v. McBryde, 944 F.2d 229 (5th Cir. 1991).** Johnson went further to list more of those covered by judicial immunity. See Johnson, supra.

### (a) JUDICIAL IMMUNITY AS TO CLAIMS AGAINST RHI ARISING UNDER 42 U.S.C. § 1983

#### (1) RHI

From the onset of this matter, plaintiffs agreed and stated that defendant, **RHI** is a non-profit corporation registered with the State of Louisiana, with its principal place of business in East Baton Rouge Parish, Louisiana. (Rec. Doc. 100, ¶ 14). Plaintiffs further stated that "**RHI** is among the private companies that offer pretrial supervision services for the JDC." (Rec. Doc. 100, ¶ 19). In short, **RHI** was identified by plaintiffs to be a state actor.

Judges have discretion and latitude in setting bonds. La. C.C.P. Art. 314. They also consider

various factors in fixing the amount of bail which includes "any other circumstances affect the probability of defendant's appearance." La. C.C.P. Art. 316. The Judges are allowed to set conditions of bail to ensure the appearance of the defendant before the court and guarding the safety of any other individual or the community. La. C.C.P. Art. 320(B). Fees associated with such pretrial bond services are assessed against the arrestees. La. C.C.P. Art. 320(c) See Also (4).

**RHI** has to be assigned by the Judge before it could sign on any arrestee and perform pretrial bond services on behalf of the court as supported by the Supreme Court. *Estelle etc.*

The Supreme Court, in West, where a private physician rendered services to a prisoner and was sued, stated that the provision of medical services to prison inmates is traditionally the exclusive prerogative of the state. Virginia has a constitutional obligation to provide adequate medical care to its prisoners because prisoners, due to incarceration, cannot obtain medical care on their own. *Estelle etc.* Va.Code Ann. Sec 53. 1-32 **(Michie Supp. 1994)** (requiring Virginia correctional facilities to provide medical services to its prisoners). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id* **at 103, 97 S.Ct. at 290.** The provision of medical services to prison inmates is the state's exclusive prerogative for the same reason it is its constitutional duty: a prisoner has no alternative means of acquiring medical care other than those provided by the state. Same is applicable to **RHI** herein. **RHI** falls squarely into such category.

This Honorable Court in its ruling on defendants Motion to Dismiss asked the question whether, under the facts plausibly plead, **RHI** was acting under color of law and thus, amenable to suit under 42 U.S.C. § 1983. (Doc. 71 P. 4.) The court went further to analyze plaintiffs' complaints which alleges that: **RHI** offers pretrial services for the 19th JDC; (Rec. Doc. 100, ¶ 21) that **RHI** is "the only approved vendor for pretrial supervision on Judge White's website"; (Rec. Doc. 100, ¶ 21) that **RHI** "does not have a formal written contract with the JDC; [and its] provision of services to Judge White is based on

an informal arrangement between **RHI** and Judge White"; (Rec. Doc. 100, ¶ 22) and that **RHI** (and not Judge White) sets the conditions of pretrial release and the payment terms for pretrial supervision. (Rec. Doc. 2, ¶¶ 33, 34, 41, 42 and 43). Not much have changed in the Second Amending Complaint of Plaintiffs.

Thus, what **RHI** did was practically functions that are "traditionally the exclusive prerogative of the State." **Stephens v. Correctional Services Corp., 428 F. Supp. 2d 580, 583-84 (ED. Tex. 2006) (citing Blum v. Yourtsky, 457 U.S. 991, 1011 (1982)).** "The maintenance of a prison system is something 'traditionally reserved to the state.'" *Id* **at 584 (citing Skelton v. Pri-Cor, Inc., 963 F.2d 100, 102 (6th Cir. 1991), cert. denied 503 U.S. 989 (1992).** Also, pretrial detention and supervision are traditionally state functions. The court in this matter asserted that "accepting the factual allegations as true, the Court finds that **RHI** performs the same public functions as the State Court vis-a-vis pretrial conditions of release". (Rec. Doc. 71, at 5)  The Court herein also properly found "that the State Court's Bond Order created some indicia of authority in **RHI**". (Rec. Doc. 71, at 6)

Plaintiffs have alleged that **RHI** threatened the Plaintiffs with re-arrest if they failed to make monthly payments to **RHI**. (Rec. Doc. 2, ¶¶ 58, 69 and 77 and now Rec. Doc. 100, ¶¶ 38, 59). Plaintiffs are alleging that **RHI** abused its authority as a state actor and as such should be held liable. **RHI** disagrees because its activities under the color of state is entitled to Judicial Immunity. Judicial immunity applied to suits under 42 U.S.C. § 1983. **Pierson v. Ray, 1967, 386 U.S. 547, 87 S.Ct. 1213, 18 L. Ed2d 288.** "[M]issue of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of state law". **United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed 1368 (1941).** Such is entitled to Judicial Immunity as has been briefed herein.

### (1) DUNN

Dunn adopts the same argument above. To the extent that Plaintiffs have asserted claims against **DUNN** in his individual capacity, such claims should be dismissed under the judicial immunity discussed herein. Plaintiffs have failed to allege any personal involvement by **DUNN** in any alleged constitutional violation. **DUNN** was not involved in threatening anyone with re-arrest of anyone. Further, Plaintiffs reference to employees of **RHI** and that **DUNN** may know Judge White and or attempted to extort Plaintiffs are conclusory. **DUNN's** duty was to supervise plaintiffs. He was a "judicial adjunct" and thus, alleging have a conspiracy between the adjunct and the judge is enough reason to extend judicial immunity to such and adjunct. **Mitchell, 944 F.2d 229 (5th Cir. 1991).**

### (b) PLAINTIFFS HAVE NOT STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER SECTION 1983 CLAIM

When considering a motion to dismiss, the court is obliged to accept as true the well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. **Johnson v. Dallas Indep. Sch. Distr., 38 F.3d 198, 205 (5th Cir. 1994), cert. Denied, 514 U.S. 1017 (1995).** "Nevertheless, minimal requirements [of pleading] are not tantamount to nonexistent requirements. The threshold may be low, but it is real-and it is the plaintiff's burden to take the step which brings its case safely into the next phase of the litigation." **Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).**

In determining whether a plaintiff has met his burden, a court is not obliged to credit "bald assertions" or "legal conclusions", but can reject "legal conclusions", "unwarranted inferences," "unwrapped deduction," "footless conclusions of law," and "sweeping legal conclusions in the form of factual allegations." Furthermore, "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." **Morse v. Lower Merion School District, 132 F.3d 902, 906-08 (3rd Cir. 1997). See also Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995); 2**

**Moore's Federal Practice**, §12.34 (1)(b) (Matthew Bender 3d. Ed.); **Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed when a plaintiff is unable to **prove** any set of facts in support of her claim which would entitle her to relief. **Conley v. Gibson**, 355 U.S. 41, 45-46 (1957); **McConathy v. Dr. Pepper/Seven Up Corp.**, 131 F. 3d 558 (5th Cir. 1998). To survive a Rule 12 motion, a plaintiff must allege a factual predicate concrete enough to warrant further proceedings. **DM Research v. College of American Pathologists**, 170 F.3d 53, 55-56 (1st Cir. 1999) ("the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.") (emphasis in original). Moreover, a claim is subject to dismissal for failure to plead necessary elements of the claim. **Sterling v. Southeastern Pennsylvania Transportation Authority**, 897 F. Supp 893 (E. D. Pa. 1995). See also **York v. Huerta-Garcia**, 36 F. Supp. 2d (S. D. Cal. 1999) (complaint that is vague, conclusory, and fails to set forth material facts in support of allegations is subject to dismissal); **Forest County Potawatomi Community of Wisconsin v. Doyle**, 828 F. Supp. 1041 (W. D. Wis. 1993) (complaint must set forth factual allegations sufficient to establish the elements that are crucial to recovery under plaintiff's claim).

### (1) CEVE DUNN, SR.

Plaintiffs have named **CLEVE DUNN, SR.** as a defendant in this matter because they really do not know who did what in their allegations. Plaintiffs have taken a shotgun approach in suing anyone they may think of as a defendant. They have failed to allege specific time, place and content of the alleged fraud or misrepresentation caused by **CLEVE DUNN, SR.,** and the injury resulting from the fraud. See **Bender v. Southland Corporation**, 749 F. 2d 1205, 1216 (6th Cir. 1984) **and Yuhasz v.**

**Brush Wellman, Inc., 341 F.3d 559,563 (6th Cir. 2003)**.

Mere recital of fraud and collusion allegations will not muster any help from the Court. It is the duty of Plaintiffs to prove their allegations by clear and convincing evidence.

Merely because **CLEVE DUNN, SR.,** works for and with **RHI** is not enough to name him as a defendant in this matter. He owns shares in the company but does not alone control the company. Plaintiffs have not and cannot prove nor point to any evidence that **CLEVE DUNN, SR.,** has done anything wrong to plaintiffs or that he has the authority to control the jail house administration or the district court judges.

Plaintiffs' shotgun approach in this matter must be curtailed and **CLEVE DUNN, SR.,** must be dismissed from this matter as plaintiffs' Complaint has failed to show what **CLEVE DUNN, SR.,** has done wrong. **CLEVE DUNN, SR.,** must be dismissed as a defendant.

Furthermore, **CLEVE DUNN, SR.,** asks this Honorable Court to dismiss all and every allegations against him, personally. He avers that he has not committed any fraud against plaintiffs and that even though he is a shareholder in **RHI,** he is personally distinct from **RHI**. **RHI** is a corporation and it is incorporated according to the laws of the State of Louisiana. **RHI** is a juridical person and an entity of its own which can sue and may be sued. Any actions taken by **DUNN** was not in his personal capacity but as a Director of **RHI**. See Exhibit "A"

**CLEVE DUNN, SR.,** avers that **RHI** is a citizen of Louisiana as it was incorporated in Louisiana and has its place of business therein. Without a doubt, a corporation is an entity quite district from its stockholders and therefore, since plaintiffs have failed to separate **CLEVE DUNN, SR.,** from **RHI** and show this Court what **CLEVE DUNN, SR.,** is personally liable for, he should be dismissed from this matter. See Exhibit "B"

In Louisiana, the concept of the separation of the corporate entity from its shareholders is the

general rule and is firmly established and the principle is well recognized. **Watson v. Big T. Timber Co; 382 So. 2d 258 (La. App. 3 Cir. 1980)**.

Again, **CLEVE DUNN, SR.,** avers that Plaintiffs' bald and unsubstantiated allegations are not enough to proceed against him personally and that he be dismissed from this matter.

### B. QUALIFIED IMMUNITY

#### (1) CEVE DUNN, SR.

**DUNN** avers that he has not committed any fraud nor civil conspiracy against plaintiffs and that even though he is a shareholder in **RHI,** he is personally distinct from **RHI. RHI** is a corporation and it is incorporated according to the laws of the State of Louisiana. **RHI** is a juridical person and an entity of its own which can sue and may be sued. Any actions taken by **DUNN** was not in his personal capacity but as a Director of **RHI.**

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of Vicarious liability." **Simon v LeBlanc, 694 F. App'x 260, 261 (5th Cir. 2017) (per curiam) (quoting Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987)).** "'A supervisory official may be held liable … only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.'" **Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) (quoting Gates v. Texas Dep't of Prot. & Reg. Servs., 537 F.3d 404, 435 (5th Cir. 2008)).** "'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.'" *Id.* **(quoting *Gates,* 537 F.3d at 435** (internal quotation marks and citation omitted, alterations and emphasis in *Gates)).*

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." **Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005)** (quoting **Board of Cty. Commirs of Bryan City v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).**" For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* **(quoting Smith v. Brenoettsy, 158 F.3d 908, 912 (5th Cir. 1998))**. "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* **(citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed.2d 412 (1989); Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 453 (5th Cir. 1994) (en banc))**. "'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.'" *Id.* **(quoting Alton v. Texas A&M Univ., 168 F.3d 196, 201 (5th Cir. 1999))**.

### (2) RHI

Plaintiffs are aware and know that **RHI** is a private corporation and have no judicial power whatsoever. **RHI** cannot and does not have the power nor authority to arrest nor fix bail. Louisiana Code of Civil Procedure Article 314. Thus, the factors enumerated in fixing the amount of bail set forth in La. C. Cr. P. Art. 316 are not applicable to **RHI**. La. C.C.P. Art. 315(B) provides in pertinent part that "[t]he court order setting the bail schedule shall fix the amount of bail for each offense listed, designate the officer or officers authorized to accept the bail, and order that the bail be taken in conformity with the schedule." **RHI** is not allowed any discretion by law or by order of the court.

Even if Plaintiffs' constitutional rights were violated, **RHI** internal policy cannot and was not the "moving force" behind the alleged violations.

It is averred herein that Plaintiffs have failed to show this Court that **RHI** is capable of being a defendant in this matter. If **RHI** is regarded as a governmental entity by Plaintiffs then plaintiffs have

failed to show how **RHI** committed fraud, collusion or violated plaintiffs' rights.  They have failed to show what role **RHI** played in such matter.

**RHI** also adopts the above argument on qualified immunity. Plaintiffs are aware and know that **RHI** is a private corporation and have no judicial power whatsoever.  **RHI** cannot and does not have the power nor authority to arrest nor fix bail. See La C.C.P. Art. 314.  Thus, the factors enumerated in fixing the amount of bail set forth in La. C. Cr. P. Art. 316 are not applicable to **RHI**.  La. C.C.P. Art 315(B) provides in pertinent part that "[t]he court order setting the bail schedule shall fix the amount of bail for each offense listed, designate the officer or officers authorized to accept the bail, and order that the bail be taken in conformity with the schedule."  **RHI** is not allowed any discretion by law or by order of the court.

Even if Plaintiffs' constitutional rights were violated, **RHI** internal policy cannot and was not the "moving force" behind the alleged violations since **RHI** never sanctioned such a policy.  Plaintiffs claims against **RHI** are conclusory.

It is averred herein that Plaintiffs have failed to show this Court that **RHI** is capable of being a defendant in this matter.  If **RHI** is regarded as a governmental entity by Plaintiffs then plaintiffs have failed to show that **RHI's** actions were objectively unreasonable in light of clearly established law.

## IV.  UNJUST ENRICHMENT

It is clear that plaintiffs have not suffered any damages but rather, gained from the services rendered by Defendants. Louisiana's unjust enrichment mirrors the common law of equity. Plaintiffs have to come with clean hands which they do not have.

Plaintiffs cannot claim unjust enrichment because (1) Plaintiffs gained from Defendants' services by getting very low bonds and other better life teachings from Defendants, and (2) Plaintiffs are precluded from asserting a claim of unjust enrichment due to the presence of other remedies at law

available to them. See <u>Dugas v. Thompson</u>, **11-0178, p.14 (La. App. 4 Cir. 6/29/11), 71 So. 3d 1059, 1068** (citing La. C.C. Art. 2298; <u>Waters v. MedSouth Record Management, LLC.</u>, **10-0352, pp. 2-3 (La 6/4/10), 38 So. 3d 241, 242**. The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided. Plaintiffs have other available remedies. Further, it is irrelevant whether their claims are viable or not. Regardless, whether Plaintiffs successfully pursue another available remedy, it does not give them the right to recover under the theory of unjust enrichment.

In the instant case, Plaintiffs are seeking unspecified amounts in alleged compensation and other payments made to Defendants over a span of time, but plaintiffs have failed to attach a single piece of documentation to support their allegations. Therefore, plaintiffs' unjust enrichment claims cannot stand as a matter of law.

## V. LUTPA

Plaintiffs, in their Second Amended Complaint alleges that under La. R.S. 51:1405(A), any unfair or deceptive trade practices are unlawful. LUTPA does not define that acts which constitute unfair or deceptive trade practices. These are determined on a case-by-case basis.

Plaintiffs fail to provide factual support for a claim under LUTPA, and as such it will not be able to prevail on any such claim against Defendants on the trial on this matter.

Plaintiffs' LUTPA claim is groundless and brought in bad faith or for purposes of harassment, and, as such, Plaintiffs are liable to Defendants for attorney's fees and costs associated with the action. La. R.S. 51:1409(A).

Therefore, Plaintiffs' LUTPA claim is baseless and must be dismissed.

## VI. PUNITIVE DAMAGES

### A. Plaintiff's Punitive Damage Claims against RHI and CLEVE DUNN, SR Should be Dismissed

Plaintiffs in a §1983 action cannot recover punitive damages from a municipality or its officials

acting in their official capacities, "It is well settled that municipalities are not subject to the imposition of punitive damages under Section 1981." **City of Newport v, Fact concerts. Inc., 453 U.S. 247, 101 S.Ct, 2748, 69 L. Ed. 616 (1981).** Furthermore, lilt is equally well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." **Barge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir, 1999).** Therefore, a plaintiff is barred from recovering punitive damages against a defendant acting in his official capacity. **J.H. v. Neustrom, 2016 WL 7638309 (WI). La, 2016): Collier v, Roberts, No. 13-01-425--SDD-SCR, 2015 WL 1128399, at *5 (M.D. La. Mar. 11,2015).** Thus, this Court should dismiss any claims by Plaintiff against **RHI** and **CLEVE DUNN, SR** in their official capacity for punitive damages.

To the extent that Plaintiff is claiming punitive damages against **RHI** or **CLEVE DUNN, SR** in their individual capacities, this claim should be dismissed as well, Under §1983, punitive damages may be awarded only if the official conduct is "motivated by evil motive or intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. **Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L. Ed.2d 632 (1983).** Plaintiff has failed to allege any facts to show that either **RHI** or **CLEVE DUNN, SR** were personally involved in the alleged constitutional violations, much less any facts to suggest that either **RHI** or **CLEVE DUNN, SR** were motivated by an evil motive or intent or reckless and/or callous indifference to Plaintiffs' constitutional rights

## CONCLUSION

Defendants aver that plaintiffs have failed to state a claim upon which any relief can be granted, even according plaintiffs' Second Amended Complaint all the deference such is entitled. Louisiana Courts have consistently held that the charge of fraud is a most serious one and that one who alleges fraud has a burden of establishing it by legal and convincing evidence since fraud is never presumed. **Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (1952).**

Plaintiffs have failed to show that **CLEVE DUNN, SR.,** and **RHI** have done anything wrong to plaintiffs and thus must be dismissed from this matter and for all other equitable remedies.

**Respectfully Submitted by:**
**THE ADEBAMIJI LAW FIRM**

*/s/ Dele A. Adebamiji*

_____
**DELE A. ADEBAMIJI #21417**
**FELICIA E. ADEBAMIJI #24836**
**1724 DALLAS DRIVE SUITE 14**
**P. O. BOX 80712**
**BATON ROUGE, LA. 70898-0712**
**TEL: (225) 927-9006   FAX: (225) 927-6008**
**Email: Adebamijilawoffice@gmail.com**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Memorandum in Support of Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system to all counsels of record.
Baton Rouge, Louisiana, this 2nd day of July, 2019.

　　　　　　　　　　　　　　*/s/ Dele A. Adebamiji*
　　　　　　　　　　　　　　**DELE A. ADEBAMIJI**